Annabelle **LIPSETT**, Plaintiff,

v.

**UNIVERSITY OF PUERTO RICO; Norman Maldonado, individually and as Chancellor of the Medical Science Campus of the University of Puerto Rico, Pedro Juan Santiago Borrero, individually and in his capacity as Dean of the School of Medicine of the University of Puerto Rico; Jose R. Gonzalez Inclan, individually and in his capacity as Acting Director of the Department of Surgery and as Acting Director of the Surgery Residency Training Program; Gumersindo Blanco, individually and in his capacity as Director of Department of Surgery and Chairman of the University of Puerto Rico and Affiliated Hospitals Residency Training Program; Ernesto Rive Mora, individually and in his capacity as Director of the Training Program of the San Juan Veterans Administration Hospital; Charles C. Freeman, Center Director of the San Juan Veteran's Administration; James G. Martin, in his capacity as Director of the United States Veterans Administration; The United States Government, Defendants.**

Civ. 83–1516CC.

United States District Court,
D. Puerto Rico.

Dec. 16, 1983.

---

Esther Vicente and José A. Lugi, "Instituto Puertorriqueño de Derechos Civiles" Río Piedras, P.R., Judith Berkan, Santurce, P.R., for plaintiff.

Francisco A. Besosa, James D. Noel, III, Ledesma, Palou & Miranda, Hato Rey, P.R., Edgardo Colón Arrarás, Comm. of P.R., San Juan, P.R., for defendants.

## OPINION AND ORDER

CEREZO, District Judge.

This is an action by a female surgery intern seeking damages, declaratory and injunctive relief against the University of Puerto Rico's (UPR) School of Medicine and several of its officers. She claims that a decision taken by these defendants refusing to promote her to the fourth year residency level at the School of Medicine's Surgery Training Program was the result of unconstitutional and illegal discrimination on account of her sex and that the procedure used to arrive at this decision also violated her right to due process of law. The complaint is brought against administrative officials and professors of the UPR and the School of Medicine [1] in their individual as well as official capacity for violations of the Civil Rights Act, 42 U.S.C. Sec. 1983, the Fourteenth Amendment, Title IX of the Education Amendments of 1972, 20 U.S.C. Sec. 1681 et seq. and for violations of various state laws annexed to the main cause of action by the allegation of pendent jurisdiction. Plaintiff also directs her complaint against several federal government officials of the Veterans Administration (VA) (Dr. Ernesto Rivé Mora, Director of the Training Program of the San Juan VA Hospital; Charles C. Freeman, Center Director of the San Juan VA and James G. Martin, the Administrator of the VA) for violation of her right to be free from discrimination as provided by the Fifth Amendment, the Civil Rights Act and Title IX. The complaint crosses into federal terrain due to a special arrangement between the VA and UPR whereby the Program's residents conduct part of their training at the VA Regional Hospital facilities and, apparently, are evaluated by VA personnel. The VA also pays for some of the residents' stipends. In essence, the complaint alleges that defendants have either permitted by inaction and/or participated directly in encouraging the biased attitudes prevailing at the Program against women who, like plaintiff, do not conform to the predominantly male faculty's conception of womanhood; an attitude which plaintiff alleges resulted in an unequal and discriminatory application of the standards of evaluation leading to the denial of her promotion. Plaintiff also alleges that federal defendant Ernesto Rivé Mora engaged in acts of sexual harassment against her and that the procedures used to evaluate her were conducted before a biased examining board without giving her an adequate opportunity to examine the evidence against her and without following the procedure established by the UPR's student regulations. The Commonwealth Government defendants have filed Motions to Dismiss and a Motion for Summary Judgment challenging the complaint for failing to state a cause of action against them and/or that they had no knowledge of the alleged discriminatory attitudes and incidents at the Program and that the decision to deny promotion was based on valid reasons as well as the result of fair proceedings. These motions will be dealt with by a separate opinion and order. Now before us is the federal defendants' Motion to Dismiss.

Before discussing this motion it should be indicated that this action was originally brought solely against the Commonwealth defendants and Ernesto Rivé Mora. How-

1. These are: Norman Maldonado, Chancellor of the Medical Science Campus; Pedro Santiago, Dean of the School of Medicine; José González, Acting Director of the Department of Surgery and Acting Director of the Surgery Residency Training Program and Gumersindo Blanco, Director of the Department of Surgery and Chairman of the University of Puerto Rico and Affiliated Hospitals Residency Training Program. The complaint was dismissed as to Jaime Rivera Dueño, the Secretary of the Department of Health of the Commonwealth of Puerto Rico and the Commonwealth of Puerto Rico. See Partial Judgment of August 30, 1983.

ever, at the hearing to discuss a petition for a temporary restraining order, the United States attorneys, appearing on behalf of Dr. Rivé Mora, joined in the argument raised by the other defendants based on the possibility that the interests of the United States could be affected by an order reinstating plaintiff as a surgery resident who would practice in the VA Regional Hospital and who could engage in negligent conduct and expose the United States to monetary liability in a malpractice action. In view of the Commonwealth defendants' allegations that plaintiff was refused continuance in the Program because of conduct which could have affected the health and well being of the patients entrusted to her care (e.g.: abandonment of her on-call duty, refusal to follow treatment procedures or instructions from her immediate supervisors) and the possibility, which in the magnified light of urgency cast by an expedient hearing appeared to be less than remote, that the United States through its agency the VA could be exposed to liability of this sort, the Court in striking a balance between plaintiff's request for immediate reinstatement and the potential for damage to the absent parties, decided that these parties should be permitted to participate in the proceedings to protect their interests. The court denied the temporary relief and ordered plaintiff to file an amended complaint to join these parties and to summon them accordingly. After the amended, and later corrected, complaint was filed and the additional parties were summoned, the court issued an order stating that any reference during the hearing to the absent parties as indispensable should not be construed as a finding of indispensability within the technical meaning of Rule 19 Fed.R.Civ.P. It was expressly stated in that order that the addi-

tional parties were to be considered merely as necessary and proper and not as indispensable.[2]

The federal defendants' Motion to Dismiss challenges the complaint on grounds of sovereign immunity, inapplicability of the law invoked to support part of the action and on the incorrect naming of the Director of the VA. Plaintiff's opposition asserts that Title IX applies to a federal agency, that the unique relationship between the VA Regional Hospital and the UPR exposed the VA's staff to liability under the Civil Rights Act, that the VA's staff participation in her unfavorable evaluation tainted by discriminatory attitudes makes the agency's action one reviewable under the Administrative Procedure Act (APA), 5 U.S.C. Sec. 702, and that the federal officials are liable for their unconstitutional conduct and subject to a *Bivens* action. Plaintiff indicated that it was not her intention to make the federal defendants liable on the state law causes of action. Plaintiff also filed a Motion to Amend the Complaint where she expands on the federal defendants' alleged liability. The amended pleading tendered refers to the relationship between Rivé Mora and the School of Medicine's faculty and his involvement in the surgery training program evaluation process, ascribes liability to defendants Freeman and Martin based on their duty to know or to have known of the discriminatory attitude and sexual harassment going on at the VA regional hospital, specifies additional types of damages, e.g.: loss of income, adds actions under the Puerto Rico Civil Rights Act, *P.R. Laws Ann.*, Tit. 32 Sec. 3524 and Article 1802 of the Civil Code, *P.R. Laws Ann.*, Tit. 31 Sec. 5141[3] and corrects the name of the VA's Administrator who had been improperly

**2.** For these reasons, the Commonwealth of Puerto Rico and the Secretary of Health, two of the parties joined after the hearing, were dismissed without much ado upon their own motion. Plaintiff did not object to their being dropped since they were brought to protect their own interest in future liability.

**3.** Again plaintiff fails to indicate against which of the several defendants these causes of action

are directed. The amendments do not make any specific references, it is only indicated in general terms that "defendants" had a duty to know. The complaint also fails to indicate the specific duty of these federal defendants. Reference is made generally to "defendants" regarding all acts of discrimination and all of the other alleged violations.

named as Martin due to a misunderstanding of no consequence with the Assistant U.S. Attorneys (the correct name being Harry N. Walters). The motion to amend the complaint has not been opposed by any of the parties and we see no reason to deny it given the liberal criteria of Rule 15, Fed.R.Civ.P., and the absence of any indication by the other parties of the amendments' adverse effects.

■ Upon examining the federal defendants' Motion to Dismiss, it is important to first note that the standard enunciated in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) requires that we assume, for purposes of this analysis, that plaintiff's factual allegations of sexual discrimination and lack of due process are true. Under this standard we are compelled to conclude that these pleadings, prima facie, set forth a cause of action based on a state agency's participation with federal officers in a decision arrived at by the use of a tainted procedure and unequal treatment because of sex which resulted in depriving plaintiff of a legitimate expectancy in being evaluated fairly. Even though one may argue, based on the same reasons later discussed regarding the VA's liability for injunctive relief, that this liberal reading could lead to the conclusion that the sovereign may be held liable on equitable relief, we find that the absence of challenge to the non-indispensable status of the United States as a defendant makes it unnecessary for the court to rule on this matter. If the United States, which originally gave the impression through the qualified representations of the Assistant U.S. Attorneys that it had an interest worth protecting by its participation in these proceedings, no longer considers the interest worthwhile and seeks to abandon this litigation under the mantle of sovereign immunity, then so be it. In the absence of any claims of indispensability or "real party in interest" arguments whereby the proceedings if actually impeded by the sovereign's immunity would have to be dismissed, there is no reason to make any further pronouncements save that the dismissal of the United States will not defeat the action. Thus, the United States is hereby ORDERED dropped as party and the amended complaint against it is DISMISSED, although it shall continue as to all other defendants.

■ As to the remaining federal defendants, the motion to dismiss must be denied for a liberal reading of the pleadings establishes their potential liability on various grounds. The first and most important part of plaintiff's action which establishes possible grounds of liability but which has not been addressed by the federal government defendants is the *Bivens* type remedy. *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), recognized the existence of a cause of action for damages against federal officers who violate rights guaranteed by the Fourth Amendment. The Court has interpreted *Bivens* to have established that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978). In *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) the Court expanded the *Bivens* remedy to include violations to the "equal protection component of the Due Process Clause" *id.* at 235, 99 S.Ct. at 2271. The *Davis* case is of particular significance to the instant complaint for the Court there recognized the *Bivens* action as the appropriate mechanism to redress a congressional assistant's gender based discriminatory dismissal from her employment. *Id.* The *Bivens* action can be brought against the federal officials in their individual capacity even if plaintiff could have instituted an action under the Federal Torts Claim Act if said remedy does not provide adequate compensation. *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). However, the availability of a *Bivens* action for damages is not a waiver of sovereign immunity and thus cannot be directed

against the United States unless the sovereign consents to be sued. *Keene Corp. v. United States*, 700 F.2d 836, 845 n. 13 (2d Cir.1983); *Radin v. United States*, 699 F.2d 681, 684 (4th Cir.1983); *Garcia v. United States*, 666 F.2d 960, 966 (5th Cir. 1982), *cert. denied* —— U.S. ——, 103 S.Ct. 73, 74 L.Ed.2d 72. Recently, the Supreme Court held that the presence of a comprehensive and adequate procedure to obtain redress, such as the Civil Service Commission's procedures, prevented resort to a *Bivens* action. *Bush v. Lucas*, —— U.S. ——, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). The admonition advanced in *Bivens* that there may be "special factors counseling hesitation" in the use of this remedy paved the way for another recent Supreme Court decision limiting the use of a *Bivens* suit when dealing with constitutional violations within the context of military proceedings. *Chappell v. Wallace*, —— U.S. ——, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). None of these special situations have been alleged to exist in this action which, as to Dr. Rivé Mora, contains allegations which are more than sufficient to state a *Bivens* action for damages against him in his individual capacity.[4]

■■■■ This type of action will generally be unaffected by the defense of sovereign immunity since the claim for damages is considered as one against the individual and not one against the sovereign. *See: Holloman v. Watt*, 708 F.2d 1399, 1402 (9th Cir.1983); *Sonntag v. Dooley*, 650 F.2d 904 (7th Cir.1981). Reference is made to the acts performed in the individual's official capacity to impart the necessary element of state or governmental action for the wrongdoing to have a constitutional dimension. *See gen.: Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) and *White v. Beal*, 447 F.Supp. 788, 795 (E.D.Penn.1978). If the government

officer is sued merely in an individual capacity for acts that have no relationship with the officer's position or authority, then the required state action must be found in some other manner. *See: Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). If, on the other hand, the government officer is sued only in his/her official capacity then the action may be considered as one against the sovereign and barred by the sovereign's immunity, *Holloman v. Watt*, 708 F.2d 1399, 1402 (9th Cir.1983); *Sánchez-Mariani v. Ellingwood*, 691 F.2d 592, 596 (1st Cir. 1982), unless the agency represented by the officer is an independent arm of government, such as a municipality. *See: Monell v. Department of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 61 (1978). Of course, the *Ex Parte Young* fiction provides an exception to the sovereign as a real-party in interest doctrine regarding acts performed in an official capacity for the official is held liable in his individual capacity because the official act performed was an abuse or unconstitutional misuse of the officer's authority and, thus, is not considered to be an act of the sovereign. *See: Dugan v. Rank*, 372 U.S. 609, 621–22, 83 S.Ct. 999, 1006–07, 10 L.Ed.2d 15 (1963) *and gen.:* 17, Wright, Miller and Cooper, *Federal Practice and Procedure*, Sec. 4231 (discussion of *Ex Parte Young*). Therefore, an action to enjoin a federal officer from acting unconstitutionally is generally not barred by the defense of sovereign immunity. *Springdale Convalescent Center v. Mathews*, 545 F.2d 943, 951 (5th Cir.1977). However, the action against the ultra vires or unconstitutional acts of the official may be barred by sovereign immunity even if the remedy sought is equitable in nature if the nonmonetary relief will require "affirmative action by the sovereign or the disposition of the unquestionably sovereign property."

---

4. Although some courts have held that the availability of remedial action by way of the Civil Rights Act against federal officials may preclude resort to a *Bivens* action, *see: Hearth, Inc. v. Department of Public Welfare*, 617 F.2d 381, 382 (5th Cir.1980); *Kostka v. Hogg*, 560 F.2d 37, 42 (1st Cir.1977) *rev'd on other grounds; Monell v.*

*Dept. of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 61 (1978), there is no need to advance a ruling on this matter given the premature stage of development of the facts that may provide the basis for the Civil Rights action.

*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 691 n. 11, 69 S.Ct. 1457, 1462 n. 11, 93 L.Ed. 1628 (1949). This footnote 11 "exception to the exception" has been interpreted restrictively to refer only to nonmonetary remedies which will "work an intolerable burden on governmental functions, outweighing any considerations of private harm." *McCartin v. Norton*, 674 F.2d 1317, 1322 (9th Cir.1982); *De Lao v. Califano*, 560 F.2d 1384, 1391 (9th Cir.1977); *Schlafly v. Volpe*, 495 F.2d 273, 277–283 (7th Cir.1974). And the general rule still emphasizes that the test to determine whether the suit is barred by sovereign immunity is phrased in terms of the judgment's impact on the public treasury. *Id.* at 280. It should also be noted that the Supreme Court has repeatedly granted prospective injunctive relief against state governmental entities which require some kind of "affirmative action" even when said equitable remedy involves the disbursement of funds for its implementation. *See e.g.: Edelman v. Jordan*, 415 U.S. 651, 667–68, 94 S.Ct. 1347, 1357–58, 39 L.Ed.2d 662 (1974). In addition, if one considers that the relief requested against the higher echelon federal defendants, Freeman and Walters, may pertain solely to an injunctive decree permitting plaintiff to continue her surgery training at the VA Hospital, then the complaint against these officers as representatives of the federal agency may be plausible in view of the waiver of sovereign immunity contained in Section 702 of the APA. 5 U.S.C. 702. Said waiver indicates:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

Our Circuit has recently construed Section 702 as a waiver of sovereign immunity for equitable relief necessary for the implementation of court orders. *Burgos v. Milton*, 709 F.2d 1, 2 (1st Cir.1983). *See also: McCartin v. Norton*, 674 F.2d at 1321 and *Scanwell Laboratories v. Shaffer*, 424 F.2d 859, 874 (D.C.Cir.1970). Contrary to the federal defendants' position rejecting the APA waiver as applicable to this case, we believe that if the pleadings are taken at face value they do establish that plaintiff suffered a "legal wrong" consisting in the application of an unequal standard of evaluation and the use of a deficient procedure to arrive at the decision discontinuing her surgery training at the Program. Clearly the federal officer's alleged participation, by their action or inaction, in this decision is sufficient to establish the required invasion of plaintiff's legally protected right, *see: Pennsylvania Railroad Company v. Dillon*, 335 F.2d 292, 294–95 (D.C.Cir.1964) *cert. denied sub. nom. American Hawaiian S.S. Co. v. Dillon*, 379 U.S. 945, 85 S.Ct. 437, 13 L.Ed.2d 543 (1964), in being evaluated fairly. That part of the action which is geared essentially at providing plaintiff with the means of enforcing an equitable decree allowing her to continue with her surgery training when it requires the use of the federal agency's facilities does not fall within the "intolerable burden" exception to nonmonetary relief previously discussed. *See: McCartin v. Norton*, 674 F.2d at 1322. Therefore, even assuming that the *Bivens* action for damages against the federal defendants, which as to Mr. Freeman and Mr. Walters may not withstand an adequately supported motion for summary judgment, were groundless, Section 702 would prevent dismissal on grounds of sovereign immunity of the equitable relief requested against them as representatives of the agency.

■ The federal defendants also argue that the complaint cannot proceed against the Veterans Administration because the agency is not a body corporate capable of being sued. Although the VA has been

held to be nonsuable in its own name, *see: ESP Fidelity Corp. v. Department of Housing and Urban Development*, 512 F.2d 887, 890 (9th Cir.1975); *Osorio v. Veterans Administration*, 514 F.Supp. 94, 96 (D.C.P.R.1981), *aff'd*, 676 F.2d 681 (1982), actions brought against the agency's director and/or officer are permitted. *See e.g.: State of Colorado v. Veterans Administration*, 430 F.Supp. 551, 557–58 (D.Col.1977) *aff'd*. 602 F.2d 926, *cert. denied* 444 U.S. 1014, 100 S.Ct. 663, 62 L.Ed.2d 643. In fact, in actions against agencies which cannot be sued *eo nomine*, the proper form to channel the action is to bring it against the secretary, director or officer of the agency. *M & M Transportation Co. v. U.S. Industries, Inc.*, 416 F.Supp. 865 (S.D.N.Y.1976). It should also be noted that when examining the statutory preclusion of judicial review regarding the Veterans Administration benefits decisions, 38 USC Sec. 211(a), courts have often indicated that they will not construe said statute to limit their power to review unconstitutional conduct by the VA. *See e.g.: University of Maryland v. Cleland*, 621 F.2d 98, 100 (4th Cir.1980). In the present case, not only does the alleged agency action/inaction refer precisely to the type of unconstitutional conduct for which the courts have refused to surrender their role of review, but the Veterans Administration has not been sued *eo nomine*. The complaint is directed at the agency's officers. In any event, this "nonsuable agency" argument, inapplicable to the present case, is another way of saying that the complaint is in reality one against the sovereign and must be dismissed, a position that, as we have already discussed, would not defeat the action for equitable relief.

The remaining legal basis of liability sought to be imposed on the federal defendants is based on novel interpretations of Title IX and the Civil Rights Act. Although Title IX has been applied to federal agencies for the purpose of enforcing its provisions against discriminators, e.g.: withdrawal of federal funding to institutions that do not comply with Title IX, we know of no case that has held that Title IX may be enforced against a federal agency that discriminates on the basis of sex. Nevertheless, the silence of the statute regarding its application to the federal government may respond to other reasons such as the almost total absence of federal educational institutions and it certainly cannot be denied that a strong argument by analogy can be made in support of plaintiff's position merely by examining how the other provisions in the Education Amendments Act regarding racial discrimination have been considered to be applicable to the federal government. *See: Cannon v. University of Chicago*, 441 U.S. 677, 694–704, 99 S.Ct. 1946, 1956–1961, 60 L.Ed.2d 560 (1979). Likewise, the general preclusion of the use of the Civil Rights Act against federal officers acting under federal law, *see: Soldevila v. Secretary of Agriculture*, 512 F.2d 427, 429 (1st Cir.1975) has its exceptions, particularly when the federal officers engage in concerted action with state officers. *See: Hampton v. Hanrahan*, 600 F.2d 600, 623 (7th Cir. 1979), reversed in part 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670, *Kletschka v. Driver*, 411 F.2d 436, 449 (2d Cir.1969). It may be possible that further development of the facts in this case may reveal such type of exceptional federal involvement with the state officers. However, in view of our determination based on the other sources of liability that the complaint against the federal defendants cannot be dismissed, we reserve our ruling on these novel issues until further development of the case.

Accordingly, it is ORDERED that the complaint against the United States be and is hereby DISMISSED. The Motion to Dismiss filed by federal defendants Ernesto Rivé Mora, James Freeman and Harry Walters (Martin) is DENIED. Defendant James G. Martin is substituted by defendant Harry Walters. The Motion to Amend the Complaint is GRANTED and the second amended complaint is ordered filed.

SO ORDERED.