735 F.2d 895
 KNIGHTS OF the KU KLUX KLAN, REALM OF LOUISIANA, Plaintiff-Appellee,
v.
EAST BATON ROUGE PARISH SCHOOL BOARD, Defendant-Appellee,
v.
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES
(formerly U.S. Department of Health, Education and
Welfare), Defendant-Appellant.
 No. 83-3292.
 United States Court of Appeals,
Fifth Circuit.
 July 9, 1984.
 
 Margaret E. Clark, William Kanter, Civil Div., Appellate Staff, Dept. of Justice, Washington, D.C., for defendant-appellant.
 Lawrence R. Anderson, Jr., Baton Rouge, La., for Ku Klux Klan.
 John F. Ward, Jr., Robert L. Hammonds, Baton Rouge, La., for East Baton Rouge Parish School Bd.
 Appeal from the United States District Court for the Middle District of Louisiana.
 Before JOHNSON, HIGGINBOTHAM and DAVIS, Circuit Judges.
 PATRICK E. HIGGINBOTHAM, Circuit Judge:
 
 
 1
 The United States Department of Health and Human Services, formerly HEW, appeals an attorney's fee award under the Equal Access to Justice Act, 28 U.S.C. Sec. 2412 et seq., in favor of the Ku Klux Klan. The government argues that contrary to 28 U.S.C. Sec. 2412(d) attorney fees were awarded without regard to the substantiality of its legal position. We conclude that the district court properly awarded fees under 28 U.S.C. Sec. 2412(b), which authorizes an award of attorney fees against the federal government for its participation in actions violative of 42 U.S.C. Sec. 1983 without regard to the strength of the government's litigation position. We also decide that post-judgment interest on attorney fees cannot be awarded against the federal government, it not having consented to such awards. We affirm in part and reverse in part.
 
 
 2
 * In 1975 the Klan sought to enjoin the East Baton Rouge Parish School Board from preventing the Klan from using a public high school as a meeting place. The merits were decided in the Klan's favor in January 1979, and for the past five years the sole issue has been attorney's fees. The facts are not in dispute and have been detailed in our earlier opinions. See 578 F.2d 1122 (5th Cir.1978) (KKK I ), 643 F.2d 1034 (5th Cir.1981) (KKK II ), 679 F.2d 64 (5th Cir.1982) (KKK III ). We set out only those facts essential to our decision.
 
 
 3
 It was the custom of the school board that facilities of the district be let to organizations on a "first-come first-serve" basis without regard to the political or ideological views of the renters. On November 17, 1975, the board approved a Klan request to rent a gymnasium for Saturday evening, November 22.
 
 
 4
 On November 19, 1975, Dr. John Bell, Branch Chief of the Dallas Office for Civil Rights of HEW, notified the Board that allowing the Klan to use Board facilities would violate the Emergency School Aid Act, 20 U.S.C. Sec. 1601 et seq., and Title VI, 42 U.S.C. Sec. 2000d et seq., causing termination of all federal financial assistance to the school district.
 
 
 5
 The next day, the Board withdrew its permission to rent to the Klan and declared a moratorium on all private use of school facilities. The following evening, Bell wired the Board again, retreating to the position that any use protected by the first amendment could not be grounds for an enforcement action. The Board, however, continued to refuse the Klan permission to hold the meeting at the school.
 
 
 6
 The Klan launched an unsuccessful effort to obtain injunctive relief in the district court, urging that the refusal to rent violated the Constitution and 42 U.S.C. Sec. 1983 et seq. The Klan later added claims under 42 U.S.C. Secs. 1985 and 1986, and joined the United States, HEW, Bell and another HEW official as additional defendants. When the Board later announced a new policy under which applicants' ideologies were to be considered in the rental decision, the Klan turned its fire on that policy as well.
 
 
 7
 At an April 1976 hearing on the Klan's application for preliminary injunction, the district court dismissed the suit, finding that the Board's original refusal to allow the Klan use of the facility was proper and that the new policy of weighing ideas was enforceable against the Klan. In support of this judgment, HEW and the school board argued for the first time on appeal that Klan meetings were open to the public only on a racially discriminatory basis, that the meeting might lead to violence, and that the Klan's use of the gym would impede school desegregation and HEW's ability to enforce statutes that proscribe racially discriminatory acts. We reversed, enjoined the Board's new rental policy and remanded for trial. KKK I, 578 F.2d 1122.
 
 
 8
 On remand, the district court permanently enjoined the Board's policy of considering the ideologies of rental applicants and ordered non-discriminatory guidelines for the letting of its facilities. The district court also permanently enjoined HEW from interfering with the Klan's use of school facilities except as consistent with Title VI or the Emergency School Aid Act. The district court then awarded attorney's fees solely against the United States.
 
 
 9
 On appeal we held that, since 42 U.S.C. Sec. 1988 did not waive sovereign immunity, the United States was not liable for attorney's fees, but we concluded that the Board could be liable for attorney's fees under 42 U.S.C. Sec. 1988 because it violated 42 U.S.C. Sec. 1983. ("Ultimately, the decision [to adopt the invalidated policy] was one for the Board alone to make.") KKK II, 643 F.2d at 1040. We remanded to the district court to award attorney's fees against the Board.
 
 
 10
 While KKK II was pending before the Supreme Court, the Equal Access to Justice Act was enacted, 5 U.S.C. Sec. 504, 28 U.S.C. Sec. 2412 (1982), and the Supreme Court remanded for reconsideration in its light. 454 U.S. 1075, 102 S.Ct. 626, 70 L.Ed.2d 609 (1981). On remand, we held that the EAJA applied retroactively, Klan III, 679 F.2d 64, and again remanded to the district court, instructing it to determine which provision of the EAJA was applicable to the government's liability for attorney's fees. On remand the district court awarded ninety percent of the attorney's fees against the government. The government appeals.
 
 II
 
 11
 Before enactment of the EAJA, 28 U.S.C. Sec. 2412 barred attorney's fee awards to prevailing parties in civil actions brought by or against the United States, unless specifically provided for by statute.[1] The EAJA added two statutory exceptions to this rule. 28 U.S.C. Secs. 2412(b), (d)(1)(A).[2] Under section 2412(b) the federal government is subject to common law[3] and statutory exceptions to the American Rule forbidding fee-shifting. See Conference Rep., H.R.Rep. No. 1434, 96th Cong., 2d Sess. 21, reprinted in 1980 U.S.Code Cong. & Ad.News 4953, 5010; H.R.Rep. No. 1418, 96th Cong., 2d Sess. 9, reprinted in 1980 U.S.Code Cong. & Ad.News 4987. Under Section 2412(d), prevailing parties meeting financial eligibility requirements will be awarded attorney's fees against the United States unless its position was substantially justified or special circumstances make an award unjust. Because we find the government liable under a fee-shifting statute incorporated by section 2412(b), we do not reach the parties' contentions regarding section 2412(d).
 
 
 12
 The Klan argues that Sec. 2412(b) supports the attorney's fee award against the government because it was a "prevailing party" and because Sec. 2412(b) incorporates specific fee-shifting provisions, here the Civil Rights Attorney's Fee Awards Act of 1976, 42 U.S.C. Sec. 1988, which, in turn, makes the government liable for attorney's fees for violating section 1983. Section 2412(b) provides:
 
 
 13
 Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.
 
 
 14
 Of course, section 1988 specifically allows for attorney's fees where a party violates 42 U.S.C. Sec. 1983,[4] and the argument is that section 1988 is thus a fee-shifting statute comprehended by section 2412(b). The argument continues that section 1983 was violated when federal officials conspired with state officials--the Board--who in turn violated the Klan's constitutional rights under color of state law.
 
 III
 
 15
 The district court did not explain whether its award of attorney's fees was made pursuant to section 2412(b) or (d). The government asserts that the Klan waived any right to fees under section 2412(b) because it did not argue section 2412(b) in the district court, and in any event the district court awarded fees pursuant to section 2412(d).
 
 
 16
 We are persuaded that the Klan did not waive any rights under 2412(b). In Klan III we remanded to determine whether the Klan qualified under section 2412(b) or (d). 679 F.2d at 69. The Klan's request to the district court for attorney's fees invoked our opinion in Klan III but, as the government emphasizes, did not specifically cite section 2412(b). But it also did not cite section 2412(d).
 
 
 17
 The government argues that because the district court expressly found that the Klan met 2412(d)'s financial eligibility requirements, and these requirements do not apply to 2412(b), see Klan III, 679 F.2d at 67, the district court intended to rest its fee award upon section 2412(d). But this argument is unconvincing because, while the district court discussed the Klan's financial eligibility, it did not discuss whether the government's position was "substantially justified," an analysis required by Sec. 2412(d), but not relevant to Sec. 2412(b). In short, the signals as to which section the district court applied and which sections the Klan urged are conflicting--too much so to warrant a conclusion that the Klan waived any right to fees under Sec. 2412(b) or that the district court rested only on Sec. 2412(d).
 
 IV
 
 18
 On appeal the government concedes that under section 2412(b) it is now "liable under Section 1988 when it is sued under a statute 'specifically' referred to in Section 1988." We agree. Under section 2412(b) the government is liable for attorney's fees "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." (emphasis added). The House Report states:
 
 
 19
 Thus, under this subsection [2412(b) ], cases involving the United States would be subject to the "bad faith," "common fund" and "common benefit" exceptions to the American rule against fee-shifting. The United States would also be liable under the same standards which govern awards against other parties under Federal statutory exceptions, unless the statute expressly provides otherwise. This subsection clarifies the liability of the United States under such statutes as the Civil Rights Attorney's Fees Award Act of 1976, as well.
 
 
 20
 H.R.Rep. No. 1418 at 17, 1980 U.S.Code Cong. & Ad.News at 4996.
 
 
 21
 Earlier cases had held that section 1988 was not applicable to the government. See Shannon v. HUD, 577 F.2d 854 (3d Cir.), cert. denied, 439 U.S. 1002, 99 S.Ct. 611, 58 L.Ed.2d 677 (1978); NAACP v. Civiletti, 609 F.2d 514 (D.C.Cir.1979), cert. denied, 447 U.S. 922, 100 S.Ct. 3012, 65 L.Ed.2d 1114 (1980); cf. id. at 521 (Wright, J., dissenting). That section 2412(b) was intended to change this result is evidenced by the legislative evolution of section 2412(b). Early drafts stated that the government would be liable as "any private party" under existing fee-shifting statutes. This language was changed to read "any other party" to make clear the government's liability under section 1988.[5] Those courts that have addressed the issue have concluded that section 1988 now applies to the government through section 2412(b). Mendoza v. Blum, 560 F.Supp. 284, 288 (S.D.N.Y.1983); see Premachandra v. Mitts, 727 F.2d 717 (8th Cir.1984) (dicta) opinion vacated and rehearing en banc granted, April 18, 1984; Unification Church v. INS, 574 F.Supp. 93, 95-96 (D.C.D.C.1983) (dicta); United States v. Miscellaneous Pornographic Magazines, 541 F.Supp. 122, 128 (N.D.Ill.1982) (dicta).
 
 
 22
 Ordinarily, when federal officials conspire or act jointly with state officials to deny constitutional rights, "the state officials provide the requisite state action to make the entire conspiracy actionable under section 1983." Hampton v. Hanrahan, 600 F.2d 600, 623 (7th Cir.1979), rev'd in part on other grounds, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). See Kletschka v. Driver, 411 F.2d 436, 448-49 (2d Cir.1969); Lipsett v. University of Puerto Rico, 576 F.Supp. 1217, 1224 (D.P.R.1983); Hauptmann v. Wilentz, 570 F.Supp. 351, 387 (D.N.J.1983). The government argues, however, that federal involvement in denying the Klan use of school facilities was so pervasive that the Board was acting under color of federal and not state law. Such a supplanting principle has been recognized. See Ellis v. Blum, 643 F.2d 68, 83 (2d Cir.1981); Askew v. Bloemker, 548 F.2d 673 (7th Cir.1976). Whatever the strength in this circuit of that argument, such dominance did not exist here.
 
 
 23
 It was the Board which decided to deny the Klan permission to hold its meeting at the school. Indisputably, the Board was influenced by federal officials who stated that the Board's action might require HEW to withhold federal funding to the school district. Whether the Board was willing to risk loss of federal funds to allow the Klan to hold their meeting, however, was a decision made under color of state law. This case is then distinguishable from Ellis v. Blum, where the court held that state employees who issued pretermination notices to Social Security disability recipients were acting "solely as agents of the Secretary [of Health and Human Services] in making determinations of disability, applying federal law and federal regulations in accordance with procedures prescribed by [the Secretary]." 643 F.2d at 83, n. 17. Similarly, in Askew v. Bloemker, the court found that the presence of several state officers who served only as backup to a federal raid planned and executed by federal officials could not support a claim under section 1983. 548 F.2d at 678. Here, the school board's role was crucial to the deprivation and it acted under color of state law.
 
 
 24
 At the same time, and virtually a fortiori, the government's argument that there was insufficient evidence to establish a conspiracy between HEW officials and the Board must fail. HEW and the Board implicitly agreed to prevent the Klan from using the facilities. Because the government participated in a violation of section 1983, we do not reach the Klan's argument that fees are recoverable because Congress intended that the federal government be liable when in analogous cases state actors would have been. Premachandra v. Mitts, 727 at 726-27.[6] Finally, we do not reach the contention that the government violated 42 U.S.C. Sec. 1985(3).
 
 V
 
 25
 The government next argues that the district court erred in not reducing the hours claimed by the Klan's attorneys and in ordering the government to pay ninety percent of the fees.
 
 
 26
 Fees under section 2412(b) may be awarded to a "prevailing party." The statute does not define "prevailing party," but its legislative history suggests that Congress intended "that the interpretation of the term in [the EAJA] be consistent with the law that has developed under existing statutes." H.R.Rep. No. 1418 at 11, 1980 U.S.Code Cong. & Ad.News at 4990. See United States v. 329.73 Acres of Land, etc., 704 F.2d 800, 808-09 (5th Cir.1983) (en banc ); NLRB v. Doral Bldg. Services, Inc., 680 F.2d 647 (9th Cir.1982) (per curiam). It is undisputed that the Klan is a prevailing party.
 
 
 27
 The government concedes liability for a portion of the Klan's fees,[7] but denies liability for time spent determining the legality of the Board's policy of weighing the ideologies of its tenants. The government concedes that it defended the refusal to let to the Klan at least through the appeal in KKK I, but argues that the constitutionality of the Board's decision to weigh the ideas of prospective tenants was also at issue and that the government never formulated, endorsed or defended that policy.
 
 
 28
 There is no question but that the government did resist the Klan's central claim which was that the Board's and HEW's acts were unconstitutional and that the Klan should be allowed to hold its meeting at the school. At least through the appeal in KKK I, the government was urging that the Board could refuse to rent to the Klan due to the possibility of violence, and that the Klan's use of the gym would impede desegregation. Indeed the government requested a remand to enable it to establish a record to justify barring the Klan. After the court's decision in KKK I, the government filed interrogatories asking the Klan whether its meetings were open to the public on a non-discriminatory basis, and whether and why anyone had ever been expelled from such meetings. In sum, the government continued to fight the Klan's basic claim of entitlement to use of the school facilities.
 
 
 29
 The district court allocated ten percent of the attorney's fees to the Board. Where, as here, the issues before the court involved a "common core of facts" and "related legal theories," it may be "difficult to divide hours spent on a claim by claim basis." Hensley v. Eckerhart, --- U.S. ----, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). Keeping in mind the Supreme Court's admonition that a "request for attorney's fees should not result in a second major litigation," id. 103 S.Ct. at 1941 and the intertwined roles of the defendants, their defenses and the major role of the government, we are not persuaded that the district court erred in its allocation.
 
 
 30
 The government also argues that there should be no award of attorney's fees the Klan incurred litigating KKK II, which held that, under the law as it then existed, the Klan could not recover fees against the government. 643 F.2d at 1039. The argument is that although the Klan ultimately prevailed on the issue of entitlement to attorney's fees, it did so only because of the enactment of the EAJA--a change in the law not produced in any way by the efforts of counsel. This argument was at least implicitly rejected in Klan III, 679 F.2d 64 (1982), a result which binds this panel.
 
 
 31
 There is concededly a windfall dimension to an award of fees to counsel whose prevailing party status would not have been possible without a change in the law for which they were in no way responsible. We have been hesitant to award fees when the results, while "winning" ones, were not the fruit of counsel's labor. See Wooten v. Housing Authority of The City of Dallas, 723 F.2d 390, 392 (5th Cir.1984); Williams v. Leatherbury, 672 F.2d 549, 551 (5th Cir.1982). On the other hand, there may also be fortuity in outcome when the law changes course in an unrelated case with common issues. At the same time, to be administrable, a prevailing party rule should not demand a finite weighing of each contributing force behind changing laws. But this is a struggle for another day because, in any event, Congress here gave prevailing parties a right to recover attorney fees and included parties in pending cases in that entitlement. As to all pending cases the newly created entitlement to fees was in the sense urged wholly fortuitous. The argument that this element of fortuity should defeat recovery is without merit.
 
 VI
 
 32
 Finally, the government resists post-judgment interest on Sec. 2412(b) attorney's fee awards. Section 2412 contains no express provision authorizing interest on attorney's fees.[8]
 
 
 33
 Interest on claims against the United States cannot be recovered absent a constitutional requirement or an express statutory provision. See United States v. Alcea Band of Tillamooks, 341 U.S. 48, 71 S.Ct. 552, 95 L.Ed. 738 (1951); Peterson v. Weinberger, 508 F.2d 45, 54 (5th Cir.), cert. denied, 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975). Holly v. Chasen, 639 F.2d 795, 797 (D.C.Cir.) (per curiam), cert. denied, 454 U.S. 822, 102 S.Ct. 107, 70 L.Ed.2d 94 (1981) (court refused to grant post-judgment interest on attorney's fees awarded against the government under the Freedom of Information Act, finding no waiver under 28 U.S.C. Sec. 1961).[9] See also Parker v. Lewis, 670 F.2d 249, 250 (D.C.Cir.1981) (per curiam); Rooney v. United States, 694 F.2d 582, 583 (9th Cir.1982).
 
 
 34
 Congress has enacted statutes specifically allowing interest on judgments against the United States. See, e.g., 28 U.S.C. Secs. 2411, 2516. If Congress wished to provide for interest payments against the government on 2412(b) claims, it knew how to do so. Absent an express waiver of sovereign immunity, post-judgment interest on attorney's fees cannot be awarded against the government under 2412(b). We affirm the district court in every respect except we reverse as to the award of post-judgment interest against the government.
 
 
 35
 AFFIRMED in part; REVERSED in part.
 
 
 
 [1]
 The relevant portion of 28 U.S.C. Sec. 2412 provided:
 Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title but not including fees and expenses of attorneys may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action.
 
 
 [2]
 The EAJA also contains provisions for attorney's fees incurred in the course of adjudicatory proceedings and awarded by administrative agencies. 5 U.S.C. Sec. 504
 
 
 [3]
 As we noted in KKK III, the common law exceptions to the American Rule include the "bad faith" and "common benefit/common fund" exceptions. "[U]nder the bad faith exception, an award of fees will be allowed against the losing party if it has willfully disobeyed a court order or otherwise acted in bad faith. See F.D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417 U.S. 116, 129-30, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). Under the 'common benefit' exception, a court may award fees to a party where the party's actions have conferred a substantial benefit upon a class of persons." KKK III, 679 F.2d at 67 (footnote omitted). The Klan first claimed that it should receive an award under the common law exceptions in its post-argument brief on appeal, but we need not consider this claim
 
 
 [4]
 The relevant portion of 42 U.S.C. Sec. 1988 provides:
 In any action or proceeding to enforce a provision of Section 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 
 
 [5]
 In Senate Bill 265, as originally proposed in 1979, Sec. 2412(b) provided that the United States shall be liable to the same extent as a "private party" (the adopted language reads "other party") would be liable. See Award of Attorneys' Fees Against The Federal Government: Hearing on S. 265 Before the Subcommittee on Courts, Civil Liberties, and the Administration of Justice of the House Judiciary Committee, 96th Cong. 2d Sess. 3, 9 (1980) (hereinafter "Hearings on S.265") (setting forth S.B.265 as of August 1979). The House Subcommittee on Courts, Civil Liberties and the Administration of Justice changed the "private party" language to "other party," apparently in response to the following testimony before the subcommittee of Armend Derfner of the Lawyer's Committee for Civil Rights under Law:
 Mr. Kastenmeier, if I could just direct myself to one portion of this bill?
 There is an area in which a slight drafting modification could carry out what I believe might be the intention of the committee; and that is to put the United States completely on a par as far as the enforcement of important constitutional and statutory rights.
 In the Civil Rights Act of 1976 you provided that when someone, whether it be an individual or business, or whatever, sues a State or local government under 42 United States Code, section 1983, to vindicate a constitutional or Federal statutory right, that fees would be available under the Newman v. Peggy [sic: Piggie] Park [390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263] standard. These bills say that the United States should pay fees--in the amendment to 28 United States Code 2412--in those circumstances where the court may award such fees in suits involving private parties.
 That doesn't say State or local government, but if the language were amended to read, "in those circumstances where the court may award such fees in suits involving other litigants": it would achieve that purpose. And I think it would go even further toward putting the United States on a par with other governmental bodies.
 Hearings on S.265 at 100.
 
 
 [6]
 There is much disagreement over this issue. Compare Saxner v. Benson, 727 F.2d 669, 673 (7th Cir.1984) (dicta); United States v. Miscellaneous Pornographic Magazines, 541 F.Supp. 122 (N.D.Ill.1982); Venus v. Goodman, 556 F.Supp. 514 (W.D.Wis.1983); and Unification Church v. I.N.S., 574 F.Supp. 93 (D.C.D.C.1983) (all finding that no rights arise under section 2412(b) when basis of claim is a "Sec. 1983 type violation" and the government is acting solely under federal law), with Premachandra v. Mitts, 727 F.2d at 726-27; Lauritzen v. Secretary of the Navy, 546 F.Supp. 1221 (C.D.Cal.1982); and Clemente v. United States, 568 F.Supp. 1150 (C.D.Cal.1983) (all finding such liability against the government)
 
 
 [7]
 Even under the more restrictive substantial justification standard of section 2412(d), the government conceded that it was liable for attorney's fees incurred by the Klan in litigating the validity of the initial refusal to rent and the applicability of the EAJA
 
 
 [8]
 Marziliano v. Heckler, 728 F.2d 151 (2d Cir.1984), seems to have allowed such interest, but the question was apparently not contested and the Second Circuit affirmed the award without discussion. Id. at 155, 159. The court in Mariziliano did not identify a statutory provision supporting its award of post-judgment interest. We assume that it was made under the general interest provision, 28 U.S.C. Sec. 1961. As such, the case conflicts with the D.C. Circuit's decision in Holly v. Chasen, 639 F.2d 795 (D.C.Cir.), cert. denied, 454 U.S. 822, 102 S.Ct. 107, 70 L.Ed.2d 94 (1981). We are persuaded by Holly
 
 
 [9]
 28 U.S.C. Sec. 1961 was recently amended to allow interest on judgments against the United States in the U.S. Claims Court and U.S. Court of Appeals for the Federal Circuit under certain circumstances. Pub.L. No. 97-164, Title III, Sec. 302(a), 96 Stat. 55 (1982); Pub.L. No. 97-258, Sec. 2(m)(1), 96 Stat. 1062 (1982). The amended statute contains no references to awards under 28 U.S.C. Sec. 2412(b)