708 F.2d 1399
 Steven Mark HOLLOMAN; Michael James Holloman; David
Emerson, Jr.; and Jeffrey Todd Emerson; Minor,
by his father and next friend, David
Emerson, Plaintiffs-Appellees,
v.
James WATT, Secretary of the Department of Interior; Forest
Girard, Assistant Secretary of the Bureau of Indian Affairs;
Sidney Mils, Acting Commissioner of the Bureau of Indian
Affairs; United States Department of Interior; Bureau of
Indian Affairs, a subdivision of the United States
Department of Interior, Defendants-Appellants.
 No. 82-3096.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 6, 1983.
Decided June 20, 1983.
 
 Kerry L. Pickett, Pickett & Pickett, Spokane, Wash., for plaintiffs-appellees.
 Claire L. McGuire, Dept. of Justice, Washington, D.C., for defendants-appellants.
 Appeal from the United States District Court for the Eastern District of Washington.
 Before BROWNING, Chief Judge, and FLETCHER and PREGERSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 The government appeals a judgment awarding damages to appellees for loss of tribal privileges arising out of acts of officials of the Bureau of Indian Affairs. We reverse. Appellees failed to carry their burden of showing congressional intent to waive the United States' sovereign immunity.
 
 
 2
 Appellees, the Holloman brothers and their cousins, the Emerson brothers, applied for enrollment as members of the Colville Indian Tribe in 1966. After reviewing the blood degree quantums of appellees' ancestors as listed on the 1937 Tribal roll, the Tribal Council found each appellee possessed the requisite one-fourth degree Colville blood, and enrolled each in the Tribe.
 
 
 3
 The Bureau of Indian Affairs (BIA) learned from a subsequent application for enrollment by a distant cousin of appellees that there was a discrepancy in the blood degree of one of appellees' common ancestors. Based upon the new information, the BIA determined that appellees lacked the requisite one-fourth degree Colville blood and so informed the Tribal Council. The Tribe took no action, and the BIA continued to make per capita and dividend payments to appellees from the funds held in trust by the United States for the benefit of Tribal members. Three years later the BIA again informed the Tribal Council that appellees were not eligible "for membership enrollment with the Colville Tribe and action should be taken by the [Tribal] Business Council to remove their names from the roll as they are not eligible for future payments made to members of the Tribe." Neither the BIA nor the Tribe gave appellees notice of the enrollment problem. The BIA discontinued per capita and dividend payments to appellees. Three years later the Tribal Council gave appellees notice and a hearing on their eligibility for continued enrollment. One year later the Council disenrolled appellees from the Tribe.
 
 
 4
 In 1979 appellees brought this suit against the Department of the Interior, the Secretary of the Interior, the BIA, the Assistant Secretary of the BIA and the Commissioner of Indian Affairs (collectively referred to as "the government"). The complaint alleged that by discontinuing per capita and dividend payments without notice and hearing the government exceeded its statutory authority and violated appellees' due process rights; and, by instructing the Council to disenroll appellees, the government caused appellees to lose tribal privileges, including tribal employment preference, wood-cutting rights, hunting and fishing rights, education grants, cultural identification and opportunities to purchase tribal lands and to take loans from the Tribe. Appellees sought restitution of per capita and dividend payments and damages for loss of tribal privileges.
 
 
 5
 During trial the BIA discovered and corrected another error on the 1937 Tribal roll. This change resulted in a determination that appellees were eligible for tribal membership and repayment of withheld per capita and dividend payments. The Council considered the new evidence and re-enrolled appellees in the Tribe. The magistrate before whom the case was tried ordered restitution of per capita and dividend payments. The magistrate also awarded damages for loss of tribal privileges caused by the government's communication of corrected blood degrees to the Tribe.
 
 
 6
 The government concedes the propriety of restitution of per capita and dividend payments and has satisfied this portion of the judgment. The government contends, however, that it was immune from appellees' claim for damages because it had not waived its sovereign immunity. We agree.
 
 
 7
 "In a suit against the United States, there cannot be a right to money damages without a waiver of sovereign immunity ...." United States v. Testan, 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976).[1] Where, as here, the claim against the United States does not rest upon a contract and is not for return of money paid to the government, the "entitlement to money damages depends upon whether any federal statute 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.' " Id. (quoting Eastport Steamship Corp. v. United States, 372 F.2d 1002, 1009 (Ct.Cl.1967)). Moreover, "[a] waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.' " United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980) (quoting United States v. King, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969)). The party who sues the United States bears the burden of pointing to such an unequivocal waiver of immunity. Cole v. United States, 657 F.2d 107, 109 (7th Cir.1981).
 
 
 8
 Appellees argue the district court could award damages for loss of tribal rights under 28 U.S.C. Sec. 1331 (1976), because resolution of the issue required construction of the various federal constitutional and statutory provisions. Section 1331 does not waive the government's sovereign immunity from suit. Kester v. Campbell, 652 F.2d 13, 15 (9th Cir.1981).
 
 
 9
 Appellees argue that Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), authorizes a damage action based upon a violation of due process without an explicit waiver of sovereign immunity. We agree that waiver of sovereign immunity is not required for a Bivens -type suit. This is not because the suit alleges a due process violation, however, but because such a suit is against the employee in his individual rather than official capacity, and is therefore not a suit against the sovereign at all. See Butz v. Economou, 438 U.S. 478, 504-05, 98 S.Ct. 2894, 2909-10, 57 L.Ed.2d 895 (1978); Keene Corp. v. United States, 700 F.2d 836, 845 n. 13 (2d Cir.1983); Inupiat Community of the Arctic Slope v. United States, 680 F.2d 122, 132 (Ct.Cl.1982); American Ass'n of Commodity Traders v. Department of the Treasury, 598 F.2d 1233, 1235 (1st Cir.1979). Since appellees' suit is against the individual defendants as officials of the United States and not as individuals, reliance on Bivens is misplaced.
 
 
 10
 Appellees argue their suit alleges a constitutional tort by federal officials, and a waiver of sovereign immunity can be found in the Federal Tort Claims Act. As a prerequisite to suit under the Act, the claimant must file an administrative claim with the appropriate federal agency--in this case the BIA. 28 U.S.C. Sec. 2675(a) (1976); Wright v. Gregg, 685 F.2d 340, 341 (9th Cir.1982). Since appellees have not filed such a claim, the Federal Tort Claims Act's waiver of sovereign immunity is not available to them.
 
 
 11
 Finally, it is argued that the per capita and dividend payments withheld from appellees were part of a fund held in trust by the government, that the government breached the trust by determining appellees were not entitled to payments from the fund, and that the subsequent loss of tribal privileges was proximately caused by the government's breach. Moose v. United States, 674 F.2d 1277, 1282-83 (9th Cir.1982), is cited for the proposition that when Congress declares the government holds funds in trust for Indians, it waives sovereign immunity with regard to damage claims for breach of that trust.
 
 
 12
 In Moose, plaintiff alleged the government breached the fiduciary duties established by 25 U.S.C. Secs. 161a and 162a in the management of funds held in trust for plaintiffs pursuant to the Southern Paiute Distribution Act, Pub.L. No. 90-584, 82 Stat. 1147 (1968). Moose, 674 F.2d at 1279-80. In this case the government also held in trust the fund from which per capita and dividend payments were made subject to fiduciary duties established by sections 161a and 162a. Here, however, the government has restored the per capita and dividend payments wrongfully withheld from appellees with interest. All that remains is appellees' claim for damages for loss of tribal privileges.
 
 
 13
 In claiming damages for loss of tribal privileges in the district court, appellees did not argue that the loss was proximately caused by the government's breach of fiduciary duty created by sections 161a and 162a. That argument was first made at oral argument, and consequently we need not address it. See Merchants Refrigerating Co. v. United States, 659 F.2d 116, 117 (9th Cir.1981).
 
 
 14
 REVERSED.
 
 
 
 [1]
 Although Testan was an appeal from a Court of Claims decision, its reasoning applies with equal force to actions brought in the district courts. See Duarte v. United States, 532 F.2d 850, 851-52 n. 2 (2d Cir.1976)