**NUCLEAR TRANSPORT & STORAGE, INC., Plaintiff,**

**v.**

**UNITED STATES of America, Acting Through its DEPARTMENT OF ENERGY; John S. Herrington, Secretary of Energy; Philip G. Sewell, Deputy Assistant Secretary of Energy for Uranium Enrichment; and Joe B. Lagrone, Manager, Oak Ridge Operations, Department of Energy, Defendants.**

Civ. No. 3–88–304.

United States District Court, E.D. Tennessee, N.D.

Nov. 29, 1988.

Charles A. Wagner, II, Knoxville, Tenn., for plaintiff.

Michael Sitcov, Federal Programs Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION

JARVIS, District Judge.

This is an action for injunctive relief, declaratory relief and money damages

brought pursuant to 28 U.S.C. §§ 1331 and 1337 alleging violations of plaintiff's due process rights under the Fifth Amendment to the United States Constitution. Plaintiff, alleging that it is the only company in the United States engaged in the business of storing unenriched uranium in the form of uranium hexafluoride ("UH"), contends that the defendants deprived it of its property (the license authorizing it to store UH) when the Department of Energy began a surreptitious and illegal program of offering free storage of UH to plaintiff's potential customers. Plaintiff brings this action against the United States; John S. Herrington, the Secretary of Energy; Philip G. Sewell, the Deputy Assistant Secretary of Energy for Uranium Enrichment; and Joe B. Lagrone, the Manager, Oak Ridge Operations, of the Department of Energy. Plaintiff brings its action against the three individual defendants in both their official and individual capacities.

The following motions are currently pending:

(1) The defendants' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, Rules 12(b)(1), (6), Federal Rules of Civil Procedure [Court File # 14] (Since matters outside the pleadings have been submitted by the parties and considered by the court, the motion to dismiss for failure to state a claim upon which relief can be granted will be treated as a motion for summary judgment. *See* Rule 12(b), Fed.R.Civ.P.); and

(2) The plaintiff's motion for a preliminary injunction [Court File # 17].

I.

*The Contentions of the Parties*

Plaintiff's complaint alleges that it is engaged in the business of providing storage facilities for uranium hexafluoride, an unenriched form of uranium needed as nuclear fuel for use in nuclear plants. Plaintiff contends that it is the only private entity in the United States currently engaged in this business. Plaintiff contends that pursuant to and in reliance upon, *inter alia*, the Department of Energy's policy, practice and rule that the storage of UH was to be done by private industry and that the Department of Energy would not store UH in competition with private industry, plaintiff acquired and developed the facilities, secured the necessary license, and began its business of storing UH for its customers. Those customers are nuclear facilities which use nuclear fuel for which the Department of Energy provides enrichment services.

Plaintiff contends that in the past it has been the policy of the Government to encourage private undertakings, investment and supply of services in all aspects of the nuclear industry except the enrichment step which has thus far remained a Government monopoly. Plaintiff contends that this policy of encouraging private sources of supply is established in DOE regulations and is consistent with the overall Government policy of encouraging private efforts in the nuclear industry. Plaintiff contends that DOE officials and employees encouraged plaintiff to become and remain a supplier of UH storage services for American and foreign entities, and that in accordance with its policy and rule of not competing with private industry, DOE would not engage itself in the storage of UH.

Plaintiff contends that at least since 1984 the Department of Energy has been secretly entering into contracts with both American and foreign entities for enrichment services which include as a general feature the provision of free storage of UH; that this has been accomplished under the subterfuge of separate "feed usage agreements"[1]; that the defendants' actions in

---

**1.** Plaintiff describes these feed usage agreements as follows:

Under the feed usage agreements being employed by DOE, uranium hexafluoride is delivered by enrichment customer to DOE's enrichment facility, and the customer's account is credited with the appropriate amount of uranium hexafluoride so delivered. At that point, DOE facially takes title to the uranium hexafluoride. Subsequently, uranium hexafluoride is enriched and delivered to the enrichment customer with appropriate deduc-

providing this free storage has caused plaintiff's business to greatly diminish and has largely eliminated the demand for storage of unenriched UH by plaintiff; and that as a result it has suffered over $5,000,000.00 in damages.

Plaintiff's complaint is divided into four counts. Count 1 alleges that DOE's provision of free storage of UH and the actions of the individual defendants in implementing, approving and carrying out the DOE policy of providing such services violates 42 U.S.C. § 2201(m) since the provision of these free services "is discouraging and

destroying the utilization and development of sources of supply independent of DOE".[2]

Count 2 of the complaint alleges that DOE's action of effectively changing the terms on which it provides uranium enrichment services to American and foreign entities to include free storage of UH is contrary to requirements of 42 U.S.C. § 2201(v)[3] and 10 C.F.R. Pt. 762.[4]

Count III of the complaint alleges that DOE's action in changing the terms on which it provided enrichment services to

---

2. tions made in its account for uranium hexafluoride which is enriched and delivered to the customer. In essence, these feed usage agreements provide free storage to the DOE enrichment contract customer prior to the performance by DOE of the costly enrichment step needed to create usable nuclear fuel. Affidavit of Bert Jody, Jr., at p. 5.

2. 42 U.S.C. § 2201(m) authorizes the Atomic Energy Commission to do the following:

Agreements Regarding Production.

(m) Enter into agreements with persons licensed under § 2133, § 2134, § 2073(a)(4), or § 2093(a)(4) of this title for such periods of time as the Commission may deem necessary or desirable (1) to provide for the processing, fabricating, separating, or refining in facilities owned by the Commission of source, by-product, or other material or special nuclear material owned by or made available to such licensee and which is utilized or produced in the conduct of the licensed activity, and (2) to sell, lease, or otherwise make available to such licensees such quantities of source or by-product material, or other material not defined as special nuclear material pursuant to this chapter, as may be necessary for the conduct of the licensed activity: *provided, however,* That any such agreement may be cancelled by the licensee at any time upon payment of such reasonable cancellation charges as may be agreed upon by the licensee and the Commission: *And provided further,* That the Commission shall establish prices to be paid by licensees for material or services to be furnished by the Commission pursuant to this sub-section, which prices shall be established on such a non-discriminatory basis as, in the opinion of the Commission, will provide reasonable compensation to the Government for such material or services and will not discourage the development of services or supply independent of the Commission;

3. 42 U.S.C. § 2201(v)(B) provides the Atomic Energy Commission the authority to

(B) Enter into contracts to provide, after December 31, 1968, for the producing or enriching of special nuclear material in facilities owned by the Commission in accordance within the period of an agreement for cooperation arranged pursuant to Section 2153 of this Title while comparable services are made available pursuant to Paragraph (A) of this sub-section: *Provided,* That (i) prices for services under Paragraph (A) of this sub-section shall be established on a non-discriminatory basis; (ii) prices for services under Paragraph (B) of this subsection shall be no less than prices under Paragraph (A) of this sub-section; and (iii) any prices established under this sub-section shall be on a basis of recovery of the Government's costs over a reasonable time: *And provided further,* That the Commission, to the extent necessary to assure the maintenance of a viable domestic uranium industry, shall not offer such services for source or special nuclear materials of foreign origin intended for use in a utilization facility within or under the jurisdiction of the United States. The Commission shall establish criteria in writing setting forth the terms and conditions under which services provided under this subsection shall be made available including the extent to which such services will be made available for source or special nuclear material of foreign origin intended for use in a utilization facility within or under the jurisdiction of the United States: *Provided,* That before the Commission establishes such criteria, the proposed criteria shall be submitted to the Joint Committee, and for a period of forty-five days shall elapse while Congress is in session (in computing the forty-five days there shall be excluded the days in which either House is not in session because of adjournment for more than three days) unless the Joint Committee by resolution in writing waives the conditions of, or all or any portion of, such forty-five-day period.

4. 10 C.F.R. Pt 762 sets forth general terms and conditions established by the Department of Energy for the provision to civilian customers of uranium enrichment services by DOE.

include free storage of UH were taken without observance of the statutory procedures required by law, including those required under 42 U.S.C. § 2201(v) and 5 U.S.C. §§ 552 and 554 of the Administrative Procedure Act.

Count IV of the complaint alleges that the defendants' conduct of changing its policy with regard to storage of UH without notice to the plaintiff and an opportunity on plaintiff's part to be heard unconstitutionally "interferred with and deprived plaintiff of the benefits of its valuable property and unlawfully and wrongfully expropriated plaintiff's property." In its prayer for relief, plaintiff seeks a temporary and permanent injunction requiring DOE to cease providing free storage of UH; a judicial declaration that DOE's policy is unlawful because it is contrary to 42 U.S.C. §§ 2011, 2201(m) and (v), and the policies and rules established under those statutory provisions; a judicial declaration that DOE's policy is unlawful because it was established as a general feature of DOE's contracts for enrichment services without observance of the statutorily required procedures for changing such criteria; and for damages in an amount exceeding $5,000,000.00.

In spite of the above characterization of its claims, plaintiff restates its claims in its brief in response to the motion to dismiss as follows:

Plaintiff's complaint states two basic claims for relief, both of which are grounded in the Fifth Amendment. The first is a claim for declaratory and injunctive relief based on Defendants' violations of statute, DOE regulations, and DOE established practice amounting to a rule, as well as Defendants' violation of statutory procedural requirements, which have deprived Plaintiff of property rights without due process. The second is a damage claim for the commission by Defendants of a constitutional tort in violation of Plaintiff's Fifth Amendment rights. This type of claim is generally denominated a *"Bivens* action." *See Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Plaintiff's brief in opposition to defendants' motion to dismiss [Court File # 19] at p. 4. This recharacterization of plaintiff's claims appears to the court to arise from a concession by plaintiff that the statutory provisions raised do not, either expressly or implicitly, create a private right of action for the benefit of plaintiff. *See Middlesex County Sewage Authority v. National Sea Clammers Association,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). Accordingly, this court will restrict its inquiry regarding the substantive merits of plaintiff's claims to the allegations that defendants' conduct deprived it of its property without due process of law in violation of the Fifth Amendment.

The defendants raise the following defenses in their motion to dismiss:

1. That sovereign immunity bars any of plaintiff's claims against the United States and the individual defendants in their official capacities;

2. That the plaintiff lacks standing to litigate its claims;

3. That the plaintiff fails to state a statutory claim against any of the defendants since (a) no express or implied private right of action exists under the Atomic Energy Act; and (b) nothing in the statutory provisions raised by plaintiff bars DOE from offering free storage of UH to its enrichment customers;

4. That since the storage of UH was developed to service an industry subject to a pervasive regulatory scheme, any loss of business suffered as a result of defendants' alleged secret storage policy cannot support a Fifth Amendment claim. (*See N L Industries, Inc. v. United States,* 12 Cl.Ct. 391 (1987), *aff'd,* 839 F.2d 1578 (Fed.Cir.1988)); and

5. That plaintiff's Fifth Amendment claim should be dismissed since it fails to contain sufficient particularity and factual detail to satisfy the requirements of *Chapman v. City of Detroit,* 808 F.2d 459 (6th Cir.1986).

## II.

### *Sovereign Immunity*

Initially, defendants contend that plaintiff's claims against the United States

and the individual defendants in their official capacities are barred by the doctrine of sovereign immunity. A claim against the United States for money damages is barred absent a waiver of sovereign immunity. *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Such a waiver cannot be implied but must be expressed unequivocally. *Id.* at 399, 96 S.Ct. at 953.

■ Plaintiff contends that the United States has waived its sovereign immunity with respect to a *Bivens* action. Although *Bivens* authorizes actions for money damages against government officials alleged to have infringed upon constitutional rights, *Bivens* does not indicate that the United States has waived its sovereign immunity with respect to *Bivens* actions brought in federal district courts. *See Holloman v. Watt,* 708 F.2d 1399, 1402 (9th Cir.1983); *Boda v. United States,* 698 F.2d 1174 (11th Cir.1983); *Adelona v. Webster,* 654 F.Supp. 968 (S.D.N.Y.1987); *Mid-South Music Corporation v. U.S. Department of the Treasury,* 579 F.Supp. 481 (M.D.Tenn.1983).[5] The court finds that the plaintiff has failed to demonstrate a waiver of sovereign immunity with respect to its claim for money damages and that claim against the United States is therefore dismissed. *See Bivens v. Six Unnamed Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 410, 91 S.Ct. 1999, 2011, 29 L.Ed.2d 619 (1971) (J. Harlan concurring). In addition, the damage claims against the individual defendants in their official capacities are barred by the doctrine of sovereign immunity since any money judgment against them would expend itself on the Federal Treasury.

■ With respect to plaintiff's claims for injunctive or declaratory relief, plaintiff relies on the waiver of sovereign immunity found in 5 U.S.C. § 702. Section 702 provides, *inter alia,* as follows:

*Right of Review.* A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking review other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a Defendant in any such action, and a judgment or decree may be entered against the United States ...

The defendants contend that waiver of sovereign immunity in the APA only applies where there exists "no other adequate remedy in a court." *See* 5 U.S.C. § 704. The Tucker Act provides that the Court of Claims has jurisdiction to render judgment upon any claim against the United States founded upon either the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, ..." 28 U.S.C. § 1346(a)(2). The court is in agreement with defendants that, if plaintiff can state a constitutional claim, it has an adequate remedy in the Claims Court and that the APA's waiver of sovereign immunity therefore does not extend to plaintiff's claims for declaratory and injunctive relief against the United States or the individual defendants in their official capacities. *See American Science & Engineering Company v. Califano,* 571 F.2d 58 (1st Cir.1978).

■ Since plaintiff has failed to demonstrate a waiver of sovereign immunity by the United States with respect to its claims for injunctive or declaratory relief against the United States, those claims must also be dismissed. However, sovereign immuni-

---

**5.** While the United States has waived its sovereign immunity for certain common law torts under the Federal Tort Claims Act (28 U.S.C. §§ 1346 and 2671, *et seq.*) and certain other claims for monetary damages in the Court of

Claims under the Tucker Act, *see* 28 U.S.C. § 1346, plaintiff must comply with the express provisions of those acts in order to establish immunity and has not done so in this case.

ty does not bar the claims for injunctive or declaratory relief with respect to the individual defendants in their personal capacity for acts allegedly committed in excess or outside of their statutory authority. Those acts, of course, cannot be considered the acts of the sovereign. *See Larson v. Domestic and Foreign Commerce Corporation,* 337 U.S. 682, 690–92, 69 S.Ct. 1457, 1461–63, 93 L.Ed. 1628 (1949).

In light of the foregoing, the court concludes that all of the claims of the plaintiff against the United States and the individual defendants in their official capacities, whether for money damages, injunctive relief or declaratory relief, are barred by the doctrine of sovereign immunity. The claims against the individual defendants in their individual capacities are not barred by sovereign immunity.

### III.

#### Standing

■ The defendants contend that plaintiff lacks standing to litigate its claim. Article III of the Constitution of the United States limits judicial power to the resolution of "cases and controversies". One component of the case or controversy requirement is that the litigant must have standing to invoke the power of the court. *See Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Although the standing doctrine is not capable of precise definition, the Court has described it as follows:

Like the prudential component, the constitutional component of standing doctrine incorporates concepts concededly not susceptible of precise definition. The injury must be, for example, "distinct and palpable," [citation omitted] and not "abstract" or "conjectural" or "hypothetical," [citation omitted]. The injury must be *"fairly"* traceable to the challenged action, and relief from the injury must be *"likely"* to follow from a favorable decision. [citation omitted]. These terms cannot be defined so as to make

application of the constitutional standing requirement a mechanical exercise. *Id.,* at 750, 104 S.Ct. at 3324.

Upon review of plaintiff's complaint, the court is of the opinion that plaintiff has satisfied the standing requirement in this case. Plaintiff alleges that it has suffered a loss of the value of its license to store UH material and injury to its business. This is a "distinct and palpable" injury. It is not abstract, conjectural or hypothetical. The court finds it is fairly traceable to the alleged actions of the defendants and, assuming that the plaintiff could state and prove a *Bivens* claim against the individual defendants, relief from the injury would be likely to follow. Therefore, the standing requirement has been met.

### IV.

#### Defendants' Qualified Immunity Defense

■ Under the doctrine of qualified immunity, government officials are shielded from liability for civil damages insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Because of the need to protect government officials from the effects of unfounded damages actions, some courts have indicated that in damages actions where government officials may rely on a qualified immunity defense the liberal notice pleading requirements of Rule 8, Federal Rules of Civil Procedure, do not apply. *See Elliott v. Perez,* 751 F.2d 1472 (5th Cir.1985). With respect to pleading requirements in § 1983 claims brought against state officials, the United States Court of Appeals for the Sixth Circuit has observed the following:

It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis of such claims must be set forth in the pleadings. . . .

There is a sound reason for requiring that a civil rights action against a

government official or employee state a claim in terms of facts rather than conclusions. When a government employee is sued, if no factual allegations are made, discovery and perhaps even trial may be required to demonstrate that the claim has no merit. Such activities require the government defendant and others such as government attorneys involved in defense of the claim to divert their attention from their usual activities and to become involved in the litigation to the neglect of their assigned duties.

In *Hopson v. Wilson*, 737 F.2d 1, 29–31 (D.C.Cir.1984), the court discussed some of these considerations stating:

Plaintiffs who fail to allege any specific facts to support a claim of unconstitutional conduct cannot expect to involve government actors in protracted discovery and trial. On receipt of such a complaint, Government defendants might move for dismissal or, alternatively, for summary judgment. Then plaintiffs must produce some factual support for their claim to avert dismissal. *Id.*, at 30. Although *Hopson* concerned claims against federal "actors" under 42 U.S.C. § 1985, the court referred to similar requirements imposed by other courts, including this court of appeals, in cases brought pursuant to § 1983.

*Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir.1986).

The plaintiff argues that its complaint contains sufficient factual specificity to satisfy the test recognized in *Elliott* and that the Sixth Circuit has never adopted or followed the *Elliott* test in cases involving a *Bivens* claim against federal officials. Plaintiff asserts that the Sixth Circuit has only adopted a requirement of heightened specificity in complaints brought under 42 U.S.C. § 1983 involving state officials. *See* Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss [Court File # 19] at p. 22.

The court is of the opinion that the heightened specificity required of § 1983 complaints against state officials should apply with equal force to *Bivens* complaints against federal officials. Federal officials, like state officials, are entitled to raise the qualified immunity defense and civil rights suits against federal officials, like those against state officials, "require the government defendant and others such as government attorneys involved in the defense of the claim to divert their attention from their usual activities and to become involved in the litigation to the neglect of their assigned duties." *Chapman*, 808 F.2d at 465. I see no reason that the heightened pleading requirement recognized in *Chapman* should not apply to a *Bivens* action brought against a federal official.

■ Plaintiff's complaint makes only general allegations with respect to the actions of the individual defendants in this case. The factual allegations of the complaint are as follows:

18. Nevertheless, since at least 1984, DOE has been secretly entering into contracts with both United States and foreign entities for enrichment services which include as a general feature the provision of free storage of uranium hexafluoride. This has been accomplished under the subterfuge of separate "feed usage agreements."

19. The individual defendants, Secretary of Energy, Deputy Assistant Secretary of Energy, and DOE Manager of Oak Ridge Operations, have each acted to implement, approve, carry out, and otherwise facilitate DOE secretly entering into contracts with United States and foreign entities for enrichment services which effectively include the provision of free storage of uranium hexafluoride.

20. DOE's and the individual defendants' actions have caused the storage of unenriched uranium hexafluoride by plaintiff to greatly diminish and have largely eliminated the demand for storage of unenriched uranium hexafluoride by plaintiff, to plaintiff's damage.

Plaintiff's Complaint at p. 8. There are no factual allegations in the complaint indicating how the individual defendants acted to "implement, approve, carry out or otherwise facilitate" the alleged secret activities. Moreover, the complaint contains no allega-

tion that the defendant officials would be unable to successfully maintain an immunity defense. *See Elliott,* 751 F.2d 1472.

It may be that the individual defendants are entitled to rely on a qualified immunity defense in this case. However, because of the total absence of any specific factual allegations with respect to any of the individual defendants, it is impossible to make that determination. The court notes that the defendants first raised the issue of the lack of specificity in the complaint in their memorandum submitted on June 29, 1988. Plaintiff has either been unable to or has not chosen to submit an amended complaint containing greater specificity. The court finds that the plaintiff's complaint fails to comply with the specificity requirements of *Chapman* for stating a constitutional claim against a government official. Accordingly, plaintiff's complaint with respect to the individual defendants will be dismissed with prejudice. *See Chapman,* 808 F.2d at 465.[6]

## V.

### *Plaintiff's Due Process Claim*

Even if the complaint satisfied the specificity requirements of *Chapman, see* § IV above, the complaint fails to state a claim upon which relief can be granted under the Fifth Amendment. Both of plaintiff's constitutional claims are brought pursuant to the due process clause of the Fifth Amendment.[7] Plaintiff does not allege, although defendants characterize plaintiff's claim as such, that its claims arise under the just compensation clause of the Fifth Amendment.[8]

Plaintiff contends that it has been deprived of its property interest in its license to store UH and its property interest in its business. Plaintiff contends that defendants destroyed the value of its license and its business when they disregarded the provisions of the Atomic Energy Act, the Administrative Procedures Act, DOE's own regulations, and DOE's long-standing practice concerning government storage of nuclear feed material. Apparently, it is plaintiff's position that it was denied the process that was due when defendants failed to give it any notice or any opportunity for a hearing before the change in DOE's policy took place. Further, plaintiff contends that defendants failed to comply with the procedural requirement of the Administrative Procedure Act, specifically 5 U.S.C. §§ 552 and 554, and the procedural requirements of 42 U.S.C. § 2201(v).

To sustain a claim for the deprivation of property without due process, the plaintiff must demonstrate the following. First, plaintiff must demonstrate the requisite property interest. Such property interests have been defined as follows:

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. *Board of Regents v. Roth,* 408 U.S. 564, 577 [92 S.Ct. 2701, 2709, 33 L.Ed.2d 548] (1972). The source of the plaintiff's claim of entitlement must be that the acts of the sovereign, state or federal, manifested in legislation, rules, or customs.

**6.** The court is of the opinion that plaintiff's reliance on *Ecclesiastical Order of Ism of Am, Inc. v. IRS,* 725 F.2d 398 (6th Cir.1984) is misplaced. *Ism* appears to address only the question of whether a *Bivens* action should be dismissed for vagueness simply because it is brought against unnamed federal officials. The *Bivens* case itself was brought against unnamed federal officers and such pleadings are obviously appropriate under some circumstances. *Ism* does not address the question present in this case and in *Chapman*—whether a civil rights action against a government official may rest solely on conclusory allegations of wrongdoing.

**7.** In relevant part, the Fifth Amendment provides as follows: "No person shall be ... deprived of life, liberty, or property, without due process of law ..."

**8.** If plaintiff's claim were a just compensation claim, the proper defendant would be the United States and the proper forum would be the Court of Claims. *See, e.g., NL Industries, Inc. v. United States,* 12 Cl.Ct. 391 (1987).

*Moore v. Johnson*, 582 F.2d 1228, 1233 (9th Cir.1978).

Second, plaintiff must demonstrate that the defendant "deprived" it of its property.

Third, plaintiff must demonstrate that this deprivation occurred without due process of law. Once a plaintiff has established a legitimate entitlement to a particular benefit, the process which is due depends upon a number of factors and "calls for such procedural protections as the situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976). Obviously a governmental agency must at a minimum comply with any statutory or regulatory procedures which apply to the governmental action in question.

At the outset, it is important to note that plaintiff does not allege that the Government has revoked its license to store nuclear material and plaintiff is still, in fact, exercising its license. Rather, plaintiff alleges that as a result of defendants' change from a policy of non-competition to a policy of providing free storage of UH to its customers, it has lost approximately 75% of its business and the value of its license is similarly diminished. *See* Affidavit of Burt Jody, Jr. at p. 4. Thus, plaintiff alleges an indirect, as opposed to a direct, injury.

With respect to plaintiff's due process claim, the primary issue presented is whether the plaintiff had such an interest in the continuance of the Government's non-competition policy that, as a matter of constitutional law, it is entitled to a hearing before the Government may change that policy. The plaintiff has identified several potential sources of that right: (1) certain statutory provisions of the Atomic Energy Act of 1954, 42 U.S.C. §§ 2011, 2201(m), and 2201(v), and the Administrative Procedures Act, 5 U.S.C. §§ 552 and 554; (2) certain regulatory provisions promulgated by the Commission, 10 C.F.R. Pt. 762; and (3) the alleged long-standing non-competition policy of the Department of Energy. The court respectfully disagrees with the plaintiff over the effect of the above provisions and policies.

Plaintiff argues that defendants' conduct is contrary to 42 U.S.C. § 2011, which sets out a "congressional declaration or policy" with regard to the use of atomic energy. Section 2011 provides, *inter alia*, as follows:

Atomic energy is capable of application for peaceful as well as military purposes. It is therefore declared to be the policy of the United States that—

. . . . .

(b) The development, use and control of atomic energy shall be directed so as to promote world peace, improve the general welfare, increase the standard of living, and strengthen free competition in private enterprise.

42 U.S.C. § 2011. This statement of Congress' general policy in passing the Act does not confer any specific rights on plaintiff or anyone else engaged in the atomic energy field. Obviously, § 2011 does not confer upon any entity engaged in that field a right to a hearing whenever the Government acts in a way which adversely affects its business. For purposes of this case, § 2011 appears to do no more than recognize the general congressional policy of strengthening free competition in private enterprise. This section alone places no restrictions on DOE's discretion in how to carry out that policy.

42 U.S.C. § 2201(m) permits DOE to enter into contracts with authorized licensees to "provide for the processing, fabricating, separating, or refining of source, by-product or other material" owned by such licensees and to "sell, lease, or otherwise make available to such licensees source or by-product material". Section 2201(m) further directs DOE to insure that when entering into these contracts the Commission shall establish prices "on such a non-discriminatory basis as, in the opinion of the Commission, would provide reasonable compensation to the Government for such material or services and will not discourage the development of sources of supply independent of the Commission." Plaintiff contends that the defendants have violated the terms of § 2201(m) by compet-

ing with it in the supplying of storage services for unenriched uranium. However, the court finds nothing in § 2201(m) which confers any right on the plaintiff in this case.

First, this section specifically refers only to the development of sources of supply. Plaintiff does not contend that it is a supplier of unenriched uranium or other materials. Furthermore, the specific language of this section affords the Commission substantial discretion in setting prices to be paid by licensees: "Prices shall be established on such nondiscriminatory basis as, *in the opinion of the Commission,* will provide reasonable compensation to the Government ...". Accordingly, nothing in § 2201(m) accords an affected third party a right to participate in the establishment of DOE's pricing policy.

 Plaintiff further relies on 42 U.S.C. § 2201(v), which authorizes DOE to enter into contracts with licensees for the enrichment of uranium. Section 2201(v)(B) requires DOE to establish written criteria setting forth the terms under which it will provide those enrichment services. DOE has established those criteria in 10 C.F.R. Pt. 762. Plaintiff does not allege that the criteria established in Part 762 were not presented to Congress as required in § 2201(v). Rather, it is plaintiff's contention that § 2201(v) requires DOE to establish regulations regarding the "storage" aspect of the contract, and if it changes its regulation regarding that aspect it must submit that change for approval to Congress first. The court disagrees with plaintiff's interpretation of this section.

The DOE established the criteria set out in 10 C.F.R. Pt. 762 pursuant to § 2201 and plaintiff does not contend that those criteria were not presented to Congress properly. The criteria submitted authorize DOE to negotiate prices on a case-by-case basis "in accordance with an overall approach intended to maintain the long-term competitive position of DOE while obtaining the recovery of Government's costs over a reasonable period of time." 10 C.F.R. § 762.4. Furthermore, the regulations allow DOE to use its judgment "of price differentials associated with supplying enrichment services to different customers." 10 C.F.R. § 762.7. Although nothing in the regulations mention the supply of storage services, § 762.14 provides that a contract "may contain terms and conditions not specified in these criteria, so long as the terms and conditions are not inconsistent with these criteria." Plaintiff has not pointed out anything in § 762 that is inconsistent with the provision by DOE of storage services for its customers as part of one of its contracts. I am of the opinion that § 762.14 demonstrates that DOE may add additional terms to its enrichment contracts, without returning to Congress for approval, at least so long as the additional terms are not inconsistent with the other provisions of § 762. Therefore, I am of the opinion that DOE was not required to submit new proposed criteria regarding the storage of unenriched uranium to Congress prior to including such provisions in its contracts with its customers. Nor does the Act or regulations promulgated thereunder require DOE to seek approval of any private person or entity prior to altering the conditions of their contracts. I find nothing in § 2201(v) or in 10 C.F.R. Pt. 762 which might confer upon plaintiff any due process rights. In addition, since § 762.14 permits the addition of other unspecified terms and conditions, the provision by DOE in its contracts of storage services does not constitute a change in DOE's rules or regulations.

Since the inclusion of the storage provision in the enrichment contracts does not constitute a change in any rule or regulation of DOE, nothing in the APA provision raised by plaintiff, 5 U.S.C. § 552 or § 554, confers any rights upon plaintiff for either information or a hearing prior to the Government's change in policy.

 Finally, plaintiff argues that it relied on DOE's longstanding policy of noncompetition. For the purposes of this motion, the court assumes that that has in fact been the policy of DOE. Nevertheless, plaintiff has not demonstrated that it had more than a "unilateral expectation" of the continuation of that policy. A constitu-

tional entitlement cannot be created by "estoppel". *See Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 465, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981). Otherwise, the Government could never change prior policy without granting a pre-determination hearing to those adversely affected. Accordingly, the court concludes that plaintiff does not have a property interest in continued maintenance by the Government of the policy of "non-competition" such that it would be entitled to a hearing before that policy could be changed.

The court notes that plaintiff does not define its property interest in this case as a right to continued maintenance of the Government's non-competition policy, but instead describes its property interest as its interest in its license to store UH and its interest in its business. Plaintiff claims that these are the interests that were damaged by defendants' actions. In due process cases, the United States Supreme Court has noted an important distinction between direct and indirect government action:

> Over a century ago, this Court recognized the principle that the due process provision of the Fifth Amendment does not apply to the indirect adverse effects of governmental action. Thus, in the *Legal Tender Cases,* [79 U.S.] 12 Wall. 457, 551, [20 L.Ed. 287] [(1870)], the Court stated:

>> "That provision has always been understood as referring only to direct appropriation, and not to consequential injuries resulting from the exercise of lawful power. It has never been supposed to have any bearing upon, or to inhibit laws that indirectly work harm and loss to individuals."

*O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 789, 100 S.Ct. 2467, 2477, 65 L.Ed.2d 506 (1980).

In the instant case, the plaintiff alleges essentially an indirect injury as the result of a change in governmental regulatory policy. Such an allegation does not state a claim under the Fifth Amendment's taking clause, *see N L Industries, Inc. v. United States,* 12 Cl.Ct. 391 (1987), nor its due process clause.[9] Plaintiff has no "property interest" in the Government's continuance of its former non-competition policy. Although plaintiff may have a property interest in its license and business, those rights are only indirectly affected by the Government's actions. I am of the opinion that such indirect impact does not entitle plaintiff to a hearing prior to a change in the Government's policy. *See O'Bannon,* 447 U.S. 773, 100 S.Ct. 2467. Thus, plaintiff has failed to state a due process claim under the Fifth Amendment.

### VI.

#### *Conclusion*

Based on the foregoing, the motion to dismiss of the United States of America and the individual defendants in their official capacities is GRANTED for lack of subject matter jurisdiction. Rule 12(b)(1), Federal Rules of Civil Procedure. The motion of the individual defendants to dismiss for failure to state a claim upon which relief can be granted, Rule 12(b)(6), Federal Rules of Civil Procedure, is GRANTED. Since plaintiff does not state a constitutional claim, its motion for a preliminary injunction [Court File # 17] is DENIED.

Order accordingly.

---

**9.** The court finds plaintiff's reliance on *Reed v. Village of Shorewood,* 704 F.2d 943 (7th Cir. 1983), misplaced. In *Reed,* defendants allegedly engaged in a practice of harassing plaintiffs' customers and employees and baseless prosecutions of the plaintiffs in an effort to destroy the value of plaintiffs' business and force them to give up their liquor license. In the instant case, the Government's action, under plaintiff's own theory, was taken to enhance the Government's own competitive interest, rather than to cause injury to the plaintiff or to take away its license or property interest.