**NUCLEAR TRANSPORT & STORAGE, INC., Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**No. 89–5052.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 5, 1989.

Decided Oct. 17, 1989.

Before MARTIN and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Nuclear Transport & Storage, Inc. (Nuclear Transport), appeals from the order of the district court granting the United States', defendant-appellee's, motion to dismiss for failure to state a claim and lack of subject matter jurisdiction, treating it in part as a motion for summary judgment, and denying plaintiff's motion for a preliminary injunction and declaratory relief 703 F.Supp. 660. For the following reasons, we affirm the order of the district court.

I.

Plaintiff-appellant Nuclear Transport is the holder of a radioactive material license issued by the Cabinet for Human Resources of the Commonwealth of Kentucky. The license is required by and granted pursuant to the Atomic Energy Act ("the Act"), 42 U.S.C. § 2131 (1982),[1] to store unenriched uranium hexaflouride (nuclear feed material). Nuclear Transport is

---

**1.** Under the Act, nuclear "source materials" may not be transferred or received without a license. 42 U.S.C. § 2092. Source materials are defined at 42 U.S.C. § 2014(z). Pursuant to the Act, 42 U.S.C. § 2021(b), the Department may, by agreement, delegate its licensing authority to individual states, and has done so in Kentucky.

the operator of a facility which stores unenriched uranium feed material owned by utilities and other private entities until it is ready to be enriched[2] by the Department of Energy (DOE) so that it may be used as fuel in nuclear power generators.

Nuclear Transport alleges that DOE, in a change from prior policy and in violation of the Atomic Energy Act, 42 U.S.C. §§ 2011–2284 (1982), has deprived it of its property interest in its license by providing free storage of unenriched uranium under the guise of feed usage agreements. Nuclear Transport alleges that because it was encouraged by DOE assurances that the federal government did not intend to provide storage services to its enrichment customers, it developed facilities for storage of 2,150 cylinders of feed material, but since 1984 because of DOE's alleged secret activities in negotiating feed usage agreements, its business has declined by approximately 75%.

DOE enters into feed usage agreements with some of its enrichment customers. Under a feed usage agreement, DOE takes title to the nuclear feed material which a customer wishes to deliver to DOE in advance of the date calculated for enrichment and DOE determines that it is to DOE's advantage to accept early delivery. DOE maintains that among the advantages that may arise from early delivery are obtaining a steady supply of unenriched uranium to keep the plants in operation, flexibility in operating the enrichment plants, and increasing the nation's stockpile of enriched uranium. Because of the exigencies of scheduling, the unenriched uranium received by DOE is in many cases not the same enriched uranium ultimately delivered to the customer and, thus, DOE argues, no actual "storage" of a customer's uranium occurs at all.

Nuclear Transport alleges that DOE's motive for entering into feed usage agreements as part of its enrichment contracts is to provide free storage to enrichment customers who otherwise would give their enrichment business to competitors of DOE in foreign countries who provide free storage of unenriched uranium.

Nuclear Transport's complaint in this action sought injunctive and declaratory relief against DOE to prevent future storage and money damages in excess of five million dollars, alleging that DOE had violated the Atomic Energy Act and denied plaintiff the value of its license without due process of law. In addition to the United States, three DOE officials were named as defendants in their official and individual capacities. During the course of argument, Nuclear Transport characterized the alleged statutory violations as *Bivens*-type constitutional torts.

The district court dismissed plaintiff's claims for lack of subject matter jurisdiction and failure to state a claim.[3] The court held that plaintiff's claims for damages against the United States and the individual defendants in their official capacities were barred by sovereign immunity. It held that plaintiff's *Bivens* claim against the individual defendants was barred because plaintiff had failed to allege any factual connection between the actions challenged and the named defendants. Finally, the district court held that plaintiff had failed to state a claim for the deprivation of a constitutionally protected property interest. The court stated that because it had considered matters outside the pleadings,[4]

---

**2.** Enrichment is a process in which the radioactive isotope, U–235, in the uranium is increased from one percent to three percent in order to make nuclear fuel suitable for use in nuclear generating plants. It is the most expensive phase of the nuclear fuel cycle and, thus, is not undertaken by utilities until just before the fuel is needed. Presently, the only enrichment facility in operation in the United States is owned by the federal government, acting through DOE, at Paducah, Kentucky. Since 1984 Nuclear Transport has been the only private company in the business of storing nuclear fuel, holding it for the utilities until it is ready to be enriched.

**3.** The district court found that plaintiff had standing because it alleged a distinct and palpable injury which was fairly traceable to the alleged actions of DOE, and assuming that plaintiff could state and prove a *Bivens* claim against the individual defendants, relief from the injury would likely follow.

**4.** DOE submitted an affidavit in opposition to Nuclear Transport's motion for a preliminary

it was transforming the government's 12(b)(6) motion to a motion for summary judgment. Because the court found that plaintiff had failed to state a claim for relief, it also denied its motion for a preliminary injunction and declaratory relief.

Nuclear Transport timely filed this appeal.

## II.

▪ This court must first decide whether the district court committed reversible error by treating the government's motion to dismiss under Rule 12 as a motion for summary judgment under Rule 56 without giving the parties reasonable opportunity to respond.

Fed.R.Civ.P. 12(b) states in relevant part:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Rule 56(c) states: "The motion shall be served at least 10 days before the time fixed for hearing."

Nuclear Transport argues that it was not notified of the court's decision to convert the government's Rule 12(b)(6) motion for failure to state a claim into a Rule 56 motion for summary judgment and was denied an opportunity to present all pertinent material.

This court has held that conversion to summary judgment without usual notice to the parties is ground for reversal only when the conversion results in prejudice. *Hoopes v. Equifax, Inc.*, 611 F.2d 134, 136 (6th Cir.1979). We find that no prejudice can be shown. The district court assumed the allegations of the complaint and ultimately dismissed plaintiff's claim for lack of jurisdiction and failure to state a claim.

The district court in essence determined that plaintiff failed to state a claim because it found as a matter of law that there was no statutory violation or violation of policy which resulted in a denial of due process. In *Oppenheimer v. Morton Hotel Corp.*, 324 F.2d 766, 768 (6th Cir.1963), this court held that it would be a useless procedure to reverse the district court for failure to provide ten days to respond to a summary judgment motion if only a substantive law question is involved. Plaintiff in the present case cannot show how the opportunity to submit additional material would have any effect on the court's analysis. Therefore, we hold that the district court did not commit reversible error in granting summary judgment.

## III.

Nuclear Transport next argues that the district court erred in holding that its claims for damages and injunctive relief against the United States and the individual defendants in their official capacities were barred by the doctrine of sovereign immunity.

The United States Supreme Court held in *United States v. Mitchell*, "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction. 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983). *See also United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941); 14 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3654, p. 186 (2d ed. 1985). The doctrine of sovereign immunity acts as a bar to suit against the United States unless there has been an explicit waiver by the government. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976).

### A.

▪ The Tucker Act states in pertinent part:

injunction. Nuclear Transport responded with an affidavit of its own. DOE then submitted

three letters which contained statements that impeached one of Nuclear Transport's affiants.

**1352**

The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491. The Supreme Court in *Mitchell* held that the Tucker Act constitutes a waiver of sovereign immunity with respect to the specified type of claims. 463 U.S. at 212, 103 S.Ct. at 2965.

Nuclear Transport argues that the claim it is making against the government is one sounding in tort and thus the Court of Claims is not the appropriate court for it to pursue its damage claim. It contends that it is bringing a *Bivens* action against the government and the individual defendants in their official capacities for the commission of a constitutional tort and that *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), constitutes a waiver of sovereign immunity.

We find no merit in this argument. Justice Harlan in his concurrence in *Bivens* noted, "[h]owever desirable a direct remedy against the Government might be as a substitute for individual official liability, the sovereign still remains immune to suit." 403 U.S. at 410, 91 S.Ct. at 2012 (Harlan, J. concurring). This court in *Mid-South Music Corp. v. U.S. Dep't of the Treasury* has held, "Since the United States has not waived its sovereign-immunity and consented expressly to be sued in a *Bivens*-type action, such suits cannot be brought against the United States." 579 F.Supp. 481, 483 (1983), *aff'd in part, rev'd in part*, 756 F.2d 23 (6th Cir.1984). Other circuits agree. *See Holloman v. Watt*, 708 F.2d 1399, 1402 (9th Cir.1983), *cert. denied*, 466 U.S. 958, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984); *Boda v. United States*, 698 F.2d 1174, 1176 (11th Cir.1983); *Garcia v. United States*, 666 F.2d 960, 966 (5th Cir.), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982); *Contemporary Mission,*

*Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 104 n. 9 (2d Cir.1981).

The Atomic Energy Act, which plaintiff alleges has been violated, contains no waiver of sovereign immunity. Because Nuclear Transport points to no statutory or judicial waiver of immunity that would allow it to pursue its damage claim against the United States, we find that the damage claim is barred by the doctrine of sovereign immunity.

**B.**

■ Nuclear Transport argues that a waiver of sovereign immunity for its claim for injunctive and declaratory relief is found in the Administrative Procedure Act (APA), 5 U.S.C. § 702, which provides:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States....

The government contends that waiver of sovereign immunity under the APA only applies where there exists no other adequate remedy in a court, 5 U.S.C. § 703, and that if plaintiff's claim is characterized as an unconstitutional taking in violation of the Fifth Amendment, it would have an adequate remedy in the Court of Claims.

Nuclear Transport argues that it is not alleging an unconstitutional taking under the Fifth Amendment. A taking claim implies that the government has a right to the property, but has not proceeded according to due process requirements. Nuclear Transport instead alleges the deprivation

of property through tortious acts and argues that the Court of Claims lacks jurisdiction to review allegations of tortious government action. *NL Indus., Inc. v. United States,* 12 Cl. Ct. 391, 396 (1987), *aff'd,* 839 F.2d 1578 (Fed.Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 63, 102 L.Ed.2d 41 (1988).

The constitutional tort which Nuclear Transport is alleging is that DOE denied it due process by violating the Atomic Energy Act. It is thus in actuality asserting a statutory claim in constitutional guise.[5] We find that plaintiff fails to state a claim that the Atomic Energy Act has been violated. Plaintiff's constitutional claim for the denial of due process stripped of the alleged violations of the statute is properly characterized as an unconstitutional taking under the Fifth Amendment, a claim which is properly brought in the Court of Claims, not in this court.

### IV.

Nuclear Transport next argues that it has been deprived of the value of its license without due process of law. Nuclear Transport contends that it has been deprived of its property interest in its license to store unenriched uranium, relying on *Reed v. Village of Shorewood,* 704 F.2d 943 (7th Cir.1983). In *Reed,* the Seventh Circuit held that plaintiffs had a constitutionally protected property interest in a liquor license, which had not been formally revoked, but allegedly had been stripped of its value by relentless, baseless prosecutions on the part of the government. *Id.* at 949.

Nuclear Transport argues that in a similar manner it has been deprived of the value of its license, because DOE acted illegally in violation of the Atomic Energy Act, DOE's own regulations, and DOE's long-standing practices by providing free storage of unenriched uranium. It is plaintiff's position that it was denied the process

that was due when DOE failed to comply with the procedural requirements of the Atomic Energy Act which would have given plaintiff notice and an opportunity to be heard. Unless Nuclear Transport can point to a specific provision of the Act or DOE regulations which has been violated, this allegation fails.

After examining each of plaintiff's statutory contentions in turn, we conclude that plaintiff can identify no interest that would entitle it to notice or a hearing prior to DOE's alleged actions.

The statement of purpose prefacing the Department of Energy Organization Act, 42 U.S.C. § 7112(14), that one of the goals of the United States is to assure, to the maximum extent practicable, that private enterprise shall be utilized in the atomic energy field is a general policy statement that does not confer any specific rights on plaintiff or anyone else engaged in the atomic energy field, nor does it place restrictions on DOE's discretion in implementing this policy. 42 U.S.C. § 2201(m) does not apply to plaintiff since that section deals only with the impact of DOE charges on sources of supply and plaintiff is not a supplier of unenriched uranium. .

42 U.S.C. § 2201(v) authorizes DOE to enter into contracts for uranium enrichment, establish written criteria setting the terms and conditions under which services shall be made available, and requires that written criteria be submitted to Congress for 45 days before becoming finally established. It also provides that any prices established be recovered by the Government over a reasonable period of time. Plaintiff's claim essentially is that there is nothing in this provision that states that a feed usage agreement that allows free storage may be made part of an enrichment contract. Plaintiff argues that DOE has violated this section because its written criteria does not specifically address the storage of unenriched uranium and a portion of the contract fee is not specifically

---

**5.** Plaintiff's complaint charged four counts of unlawful conduct. The first three alleged that DOE had violated the Atomic Energy Act by providing free uranium storage when it contracts to provide enrichment services. In the course of argument in the district court, plaintiff changed its theory of the case, proceeding exclusively on the basis of alleged constitutional violations.

attributed to storage costs. However, DOE implementing regulations state, "A contract may contain terms and conditions not specified in these criteria, so long as the terms and conditions are not inconsistent with these criteria." 10 C.F.R. § 762.14. We find that provision of storage services is not inconsistent with any other criteria.

The statute's provision that any prices established shall be designed to recover costs does not require DOE to charge on an itemized basis for every cost incurred. The legislative history of the Act indicates that cost recovery is to be flexible. S.Rep. No. 1325, 88th Cong., 2nd Sess. (1964), *reprinted in* 1964 U.S. Code Cong. & Admin.News 3105, 3122. Regulation 762.4 provides that DOE may negotiate prices on a case-by-case basis "in accordance with an overall approach intended to maintain the long-term competitive position of DOE while obtaining the recovery of the Government's costs over a reasonable period of time." 10 C.F.R. § 762.4. Regulation 762.7 provides that DOE shall set prices on the basis of its "judgment of cost differentials associated with supplying enrichment services to different customers." 10 C.F.R. § 762.7. Contrary to Nuclear Transport's allegations, the statute and regulations accord DOE flexibility in negotiating enrichment contracts rather than requiring a strict cost-per-item basis.

Finally, we reject plaintiff's assertion that the government's change in established policy has unlawfully deprived it of its property interest in its license.[6] Even if the government has changed its regulatory policy to plaintiff's commercial detriment, plaintiff has alleged no more than an indirect injury resulting from government action which does not create entitlement to a hearing. *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 789, 100 S.Ct. 2467, 2477, 65 L.Ed.2d 506 (1980) ("due process provision of the Fifth Amendment does not apply to the indirect adverse effects of governmental action"). Nuclear Transport's license provided it at most with a "mere unilateral expectation" that the government would not provide storage space, which "is not a property interest entitled to protection." *Calvert Inv., Inc. v. Louisville and Jefferson County Metro. Sewer Dist.*, 847 F.2d 304, 307 (6th Cir. 1988) (quoting *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980)). *See also Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981) (a constitutional entitlement cannot be created by estoppel); *NL Indus., Inc. v. United States*, 12 Cl.Ct. at 394–400 (no claim for unconstitutional taking when government imposed moratorium on construction of nuclear processing plants even · though government's action allegedly totally destroyed value of plaintiff's business, plaintiff alleged that government's action was unforeseeable, and government had allegedly induced plaintiff to enter business and invest approximately $15 million). Otherwise, the government could never change prior policy without granting a predetermination hearing to those adversely affected.

We find that nothing in the statute, regulations, or DOE policy provides plaintiff with a constitutionally protected right to provide storage services under its license free of government competition or entitles plaintiff to a predetermination hearing when there is a change of policy. For these reasons, we hold that plaintiff fails to state a claim that it has been deprived of the property value of its license without due process of law.

### V.

■ Finally this court must determine whether the district court erred in dismissing Nuclear Transport's *Bivens* claim against the individual defendants for lack of specificity.

The government argues that Nuclear Transport has failed to make any factual allegations that connect any of the individual defendants to the alleged illegal actions. It relies on *Chapman v. City of*

---

**6.** Nuclear Transport submitted an affidavit in which former DOE officials stated that established DOE policy requires that DOE not compete with commercial storage facilities.

*Detroit,* 808 F.2d 459, 465 (6th Cir.1986) in which this court stated that a complaint for damages against government officials must contain more than "mere conclusory allegations of unconstitutional conduct by persons acting under color of state law."

Nuclear Transport argues that *Chapman* concerned a 42 U.S.C. § 1983 claim rather than a *Bivens* action and that under *Bivens* once one has pleaded with sufficient particularity what unlawful acts have occurred, it is often impossible to determine prior to discovery the name of the person who committed the unlawful act or how it was accomplished.

We find that the rationale of this court in *Chapman* is applicable to a *Bivens* as well as a 1983 claim. In *Chapman* this court stated:

> There is a sound reason for requiring that a civil rights action against a government official or employee state a claim in terms of facts rather than conclusions. When a government employee is sued, if no factual allegations are made, discovery and perhaps even trial may be required to demonstrate that the claim has no merit. Such activities require the government defendant and others such as government attorneys involved in defense of the claim to divert their attention from their usual activities and to become involved in the litigation to the neglect of their assigned duties.

808 F.2d at 465. If a mere assertion that a former cabinet officer and two other officials "acted to implement, approve, carry out, and otherwise facilitate"[7] alleged unlawful policies were sufficient to state a claim, any suit against a federal agency could be turned into a *Bivens* action by adding a claim for damages against the agency head and could needlessly subject him to the burdens of discovery and trial.

Moreover, under the doctrine of qualified immunity, government officials are shielded from liability for civil damages insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Because of the need to protect government officials from the effects of unfounded damage actions, the Fifth Circuit in *Elliott v. Perez,* 751 F.2d 1472, 1482 (5th Cir.1985) held that in these circumstances greater specificity should be required in order to support the contention that a plea of immunity cannot be sustained. We see no reason why the heightened pleading requirement recognized in *Elliott* and *Chapman* should not apply to a *Bivens* action brought against a federal official. Therefore, we affirm the opinion of the district court on this issue.

For the reasons stated above, the district court's granting of the government's motion to dismiss for failure to state a claim and lack of subject matter jurisdiction is affirmed.[8] The district court's denial of plaintiff's motion for a preliminary injunction and declaratory relief is also affirmed.

---

7. This was the statement made in plaintiff's complaint.

8. On page 2 of the district court's opinion, 703 F.Supp. at 662, the court stated, "Since matters outside the pleadings have been considered by the court, the motion to dismiss for failure to state a claim upon which relief can be granted will be treated as a motion for summary judgment." *See* Rule 12(b), Fed.R.Civ.P.