65 F.3d 1322
 12 A.D.D. 816, 7 NDLR P 90
 Jerry L. VAUGHN, Plaintiff-Appellee,
v.
UNITED STATES SMALL BUSINESS ADMINISTRATION, et al., Defendants,
John Whitmore, individually and in his capacity as Acting
Associate Administrator of the Office of Minority
Small Business & Capital Ownership
Development, SBA, Defendant-Appellant.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 2, 1993.
Decided Sept. 21, 1995.
 
 Mary L. Wolff (briefed), Daniel K. Evans, Wolff Ardis, Memphis, TN, Daniel F. Goldstein (argued), Karen R. Johnson, Brown, Goldstein & Levy, Baltimore, MD, for plaintiff-appellee.
 Sidney P. Alexander, Asst. U.S. Attorney, Daniel A. Clancy, U.S. Attorney, Office of the U.S. Attorney, Memphis, TN, Eric S. Benderson, Cheri Cannon Wolff, U.S. Small Business Administration, Office of General Counsel, Washington, DC, Barbara L. Herwig, John C. Hoyle (argued and briefed), U.S. Department of Justice, Appellate Staff, Civil Division, Washington, DC, for defendant-appellant.
 Before: ENGEL, JONES, and SUHRHEINRICH, Circuit Judges.
 ENGEL, J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. JONES, J. (pp. 1330-31), delivered a separate dissenting opinion.
 ENGEL, Circuit Judge.
 
 
 1
 The question in this appeal is whether defendant-appellant John Whitmore, an official of the United States Small Business Administration (SBA), is entitled to qualified immunity in a suit arising out of the SBA's denial of certain benefits to plaintiff Jerry Vaughn. Vaughn, a blind white male, brought this action for punitive damages in the district court, alleging that he was denied these benefits on account of his race and handicap, in violation of 29 U.S.C. Sec. 794, 42 U.S.C. Sec. 1981, 42 U.S.C. Sec. 1985(3), and the Fifth Amendment of the Constitution. The district court below concluded that Whitmore was not entitled to qualified immunity from Vaughn's suit. Because we conclude that Whitmore did not violate any of Vaughn's clearly established rights, we REVERSE the district court's refusal to grant Whitmore qualified immunity.
 
 I. Background
 
 2
 Vaughn, a registered Tennessee contractor, applied in April, 1986, for federal assistance pursuant to the SBA's 8(a) program. Under the 8(a) program, 15 U.S.C. Sec. 637(a), contracts are awarded to "small business[es] owned and controlled by socially and economically disadvantaged individuals." Persons who fall within certain designated ethnic or minority groups (Black Americans, Native Americans, etc.) are presumed disadvantaged. 13 C.F.R. Sec. 124.105(b). Others, such as persons with disabilities, can be admitted if they prove social disadvantage by clear and convincing evidence. Id.
 
 
 3
 In July, 1987, the SBA denied Vaughn's first application for admission to the 8(a) program on the ground that he was not "socially and economically disadvantaged." A request for reconsideration was denied the following year. At this point, Vaughn complained to the SBA's Office of Civil Rights Compliance (OCRC) that he was denied admission to the 8(a) program on account of his race and his handicap. A preliminary report drafted by OCRC found that the denial of Vaughn's first application had been arbitrary and capricious and that Vaughn had been the victim of discrimination on account of both race and handicap. This preliminary report suggested that officials at the SBA were disinclined to grant 8(a) benefits to non-minority applicants. However, the finding of discrimination was rejected by the SBA Office of the General Counsel, and later qualified by the OCRC in its final report. The agency's final disposition of the discrimination complaint ultimately concluded that Vaughn's first application to the 8(a) program was processed in an arbitrary and capricious manner, but that no discrimination had occurred.
 
 
 4
 Vaughn reapplied to the 8(a) program in February, 1989, and was once again denied. This second application was denied for two reasons: (1) he had still not proved social and economic disadvantage by clear and convincing evidence; and (2) his contracting business did not exhibit the potential for success. According to the SBA's "potential for success" test, 13 C.F.R. Sec. 124.107, an applicant cannot participate in the 8(a) program unless the applicant's contracting business has generated some revenue in the two years prior to application, which Vaughn's business has not.
 
 
 5
 Vaughn's request for reconsideration of this second agency action was denied in February, 1991, by defendant John Whitmore. The denial of Vaughn's request for reconsideration of his second 8(a) application was Whitmore's only involvement with Vaughn's case, and therefore comprises the only basis for asserting any claim of discrimination against Whitmore individually.
 
 
 6
 Contrary to the findings of previous evaluators, Whitmore concluded that Vaughn might in fact be "socially and economically disadvantaged," as the 8(a) program requires. Nonetheless, Whitmore concluded that Vaughn was ineligible to participate in the 8(a) program, because Vaughn's business had not generated any revenue in the two years prior to his second application, and therefore, Vaughn failed the potential for success test. Whitmore further concluded that there was no basis in Vaughn's case to justify a waiver of the two year revenue rule, although such waiver is permitted under certain narrow circumstances.
 
 
 7
 On February 28, 1992, Vaughn filed suit against the SBA and several individual defendants. In response to Whitmore's motion to dismiss, or in the alternative, for summary judgment, the district court concluded that Whitmore was not entitled to qualified immunity, and Whitmore now appeals that ruling.[1] "Since application of the doctrine of qualified immunity to a particular defendant is a question of law," we "revie[w] de novo the district court's disposition." Mumford v. Zieba, 4 F.3d 429, 432 (6th Cir.1993).
 
 II. The Dissent
 
 8
 The dissent would affirm the district court because, and presumably only because, Whitmore allegedly failed to present his argument to the lower court that Vaughn did not state his claims "in terms of facts rather than conclusions." We respectfully disagree. In his motion in the district court, Whitmore alleged:
 
 
 9
 the plaintiff must show that the conduct of the individual government officers violated some clearly established statutory or constitutional rights of which they should have been aware.... Vaughn has not established that any of his statutory or constitutional rights were violated by any of the defendants.
 
 
 10
 App. 139-140. That Whitmore may not have used the phrase "facts rather than conclusions" or raised that specific form of the objection is not, in our view, dispositive. There are many different ways of expressing legal ideas, and it seems to us altogether apparent that Whitmore did indeed make the objection on which we reverse before the district court. The possibility that the district court misunderstood the argument does not render it an "issue not litigated in the trial court," nor does it bar our review. In our judgment the issue was "fairly raised" below and the trial court given an opportunity to address it.
 
 
 11
 It would be unfortunate and unfaithful to the meaning of the law, in our view, to rule otherwise. To so hold would render unreviewable any argument which was not completely articulated in the court below, leaving us to decide the issues, not as finally and most maturely expressed, but tightly confined to the form in which they were presented to the district court. Were this the rule, there would be little reason indeed to require fresh briefing and oral argument in this court. There is more substance than this in the appellate process. We admit we would not be justified in "running away with a case" on some new and previously unvisited theory, but we have not done so here. The concept of appellate review does vest the appellate court with a responsibility to carry out that review in a sensible and realistic way, given the overall dimensions of the conflict below. We therefore proceed to the merits.
 
 III. Analysis
 
 12
 Administrative decisions made by "government officials performing discretionary functions," such as Whitmore, are immunized from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, supra note 1, 457 U.S. at 818, 102 S.Ct. at 2738. The philosophical underpinning of the doctrine of qualified immunity is a desire to avoid "the substantial costs" imposed on government, and society, by "subjecting officials to the risks of trial." Harlow, 457 U.S. at 816, 102 S.Ct. at 2737. Chief among such burdens are the "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." Id.; Mitchell v. Forsyth, 472 U.S. 511, 525-26, 105 S.Ct. 2806, 2814-16, 86 L.Ed.2d 411 (1985); Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).
 
 
 13
 To avoid imposing needless discovery costs upon government officials, the determination of qualified immunity must be made at an early stage in the litigation. Harlow, 457 U.S. at 816-18, 102 S.Ct. at 2737-38; Mitchell, 472 U.S. at 526, 105 S.Ct. at 2815-16. As the Supreme Court noted recently, an early ruling on qualified immunity is essential to protect government officials from the burden of needless litigation:
 
 
 14
 Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits. One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit.
 
 
 15
 Siegert, supra note 1, 500 U.S. at 232, 111 S.Ct. at 1793.
 
 
 16
 While Harlow and its progeny unquestionably implore district courts to address claims of qualified immunity promptly, courts must also be careful not to make such rulings so hastily that our liberal pleading standards are jeopardized. As we noted in Dominque v. Telb, 831 F.2d 673, 676 (6th Cir.1987), qualified immunity is an affirmative defense, and the "civil rights plaintiff is not bound as a matter of law to anticipate such a defense in his pleading." Thus, when an official asserts qualified immunity as a defense to a civil rights suit, and when the plaintiff's complaint fails to allege the violation of a clearly established right, the plaintiff should be offered "an opportunity to come forward with ... additional facts or allegations" before the case can be dismissed. Id. In this case, Vaughn was given an opportunity to supplement the factual allegations in his complaint when he responded in writing to Whitmore's motion to dismiss. At oral argument on appeal, Vaughn confirmed that he had been given ample opportunity to allege all of the available facts which support his claim.
 
 
 17
 In Vaughn's complaint, he levels serious allegations of discrimination against the SBA as an institution and against several officials within the SBA. Vaughn insists that his first application to the 8(a) program was denied in July of 1987 solely because the SBA prefers minority applicants over handicapped whites. In support of this contention, Vaughn points to the OCRC's preliminary report, which suggested that the agency may have improperly disqualified white applicants from eligibility for the 8(a) program.
 
 
 18
 The district court dismissed Vaughn's discrimination claims against the individuals who denied his first application for 8(a) benefits, because Vaughn failed to bring that action before the statute of limitations lapsed. To simplify this appeal, we assume arguendo that the denial of Vaughn's first 8(a) application was discriminatory. However, that premise does little to address Whitmore's immune status, because Whitmore was not involved in the processing of Vaughn's first application. In fact, Whitmore has taken only one action affecting Vaughn's participation in the 8(a) program: his refusal to reconsider the SBA's denial of Vaughn's second application to be certified as an 8(a) contractor. Under Harlow, Whitmore can only be subjected to personal liability for this decision if his actions violated a right clearly conferred upon Vaughn by statute or by the Constitution.
 
 
 19
 Vaughn argues that Whitmore denied his application to the 8(a) program because Vaughn is a blind white man. According to his complaint,
 
 
 20
 Vaughn was denied participation in the 8(a) program ... solely because of his handicap and because he is white. Such denial ... was arbitrary and capricious and constitutes discrimination on the basis of handicap and race.
 
 
 21
 The SBA's consideration of his race and handicap, Vaughn argues, violates his unquestionable right to be free of race- and handicap-based government decisionmaking. In contrast, Whitmore argues that he denied Vaughn's application for entirely permissible reasons--because Vaughn did not meet the SBA's objective standards for certification as an 8(a) contractor.
 
 
 22
 To defeat Whitmore's claim of qualified immunity, Vaughn must do more than make vague and conclusory allegations of discrimination. As we have explained previously, government officials should not be subjected to the potentially-crippling cost and inconvenience of litigation unless the plaintiff alleges some factual basis supporting the claim that a clearly established right was violated:
 
 
 23
 It is not enough for a complaint under Sec. 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings....
 
 
 24
 There is a sound reason for requiring that a civil rights action against a government official or employee state a claim in terms of facts rather than conclusions. When a government employee is sued, if no factual allegations are made, discovery and perhaps even trial may be required to demonstrate that the claim has no merit. Such activities require the government defendant and others such as government attorneys involved in the defense of the claim to divert their attention away from their usual activities and to become involved in the litigation to the neglect of their assigned duties.
 
 
 25
 Chapman v. City of Detroit, 808 F.2d 459, 465 (1986); Nuclear Transport & Storage, Inc. v. United States, 890 F.2d 1348, 1354-55 (6th Cir.1989), cert. denied, 494 U.S. 1079, 110 S.Ct. 1807, 108 L.Ed.2d 938 (1990).
 
 
 26
 As we noted above, Whitmore's only interaction with Vaughn was Whitmore's refusal to reconsider the agency's denial of Vaughn's second 8(a) application. In fact, Whitmore is only specifically mentioned in one of the twenty-three paragraphs in the "Factual Background" section of Vaughn's complaint. To strip Whitmore of his qualified immunity, Vaughn's allegations--either in the complaint or in his brief below--must suggest some factual basis for concluding that Whitmore's decision was based on race or handicap. However, our careful review of Vaughn's complaint and his supplemental arguments identifies no point at which Whitmore made any decision based on impermissible criteria, and Whitmore makes a persuasive showing that his denial of 8(a) certification to Vaughn was in all likelihood an outcome mandated by federal law.
 
 
 27
 According to Vaughn's complaint, Whitmore denied Vaughn's second 8(a) application for two reasons: (1) Vaughn's company "had not been in business for two years," and therefore failed the potential for success test; and (2) Vaughn's business "did not qualify for a waiver of the two year business rule." Thus, the denial of Vaughn's 8(a) certification involved two separate determinations on Whitmore's part. First, Whitmore had to apply the facially-neutral potential for success test from 13 C.F.R. Sec. 124.107. After Whitmore determined that Vaughn failed that test's two year revenue rule, he had an opportunity to further determine Vaughn's eligibility for a waiver of that requirement. To enjoy qualified immunity, Whitmore must have made both of these independent determinations without impermissible reference to Vaughn's race or handicap.
 
 
 28
 We see no way in which discriminatory considerations could have entered into Whitmore's application of the potential for success test, since the outcome of that test is determined by a simple mathematical calculation. To pass the potential for success test, Vaughn must show the agency that his contracting business has generated income in the two years prior to application for certification as an 8(a) contractor:
 
 
 29
 SBA will approve a concern for Program Participation only when ... [the] applicant concern [can] demonstrate that it has been in business in the primary industry classification in which it seeks 8(a) certification for two full years prior to the date of its 8(a) application by submitting income tax returns showing revenues for each of the two previous years.
 
 
 30
 13 C.F.R. Sec. 124.107(a).
 
 
 31
 Vaughn failed to show "revenues for each of the two previous years," as the regulation unambiguously requires, and therefore Whitmore determined that Vaughn's business did not exhibit the "potential for success" required for participation in the 8(a) program. Because this test is entirely objective, we cannot agree with Vaughn that Whitmore's application of the potential for success test in this case embodied impermissible considerations. Vaughn's company either earned such income, or it did not--that is the only inquiry involved in application of the potential for success test. Since Whitmore had no discretion pursuant to which he might have discriminated, his determination in this regard cannot be considered a violation of any statutory or constitutional rights.
 
 
 32
 Despite failing to meet the objective criteria listed in 13 C.F.R. Sec. 124.107, Vaughn nonetheless argues that Whitmore discriminated against him by failing to waive the two year revenue rule, as permitted by the 1990 AMENDMENTS TO THE SMALL BUSINESS ACT AND RELATED ACTS, Pub.L. No. 101-574, Sec. 203, 104 Stat. 2818, 2819. Under that law, a prospective applicant who meets all of the following stringent criteria may be certified as an 8(a) contractor, despite lacking revenue in the two years prior to application:
 
 
 33
 (A) the individual or individuals upon whom eligibility is to be based have substantial and demonstrated business management experience;
 
 
 34
 (B) the prospective Program Participant has demonstrated technical expertise to carry out its business plan with a substantial likelihood of success;
 
 
 35
 (C) the prospective Program Participant had adequate capital to carry out its business plan;
 
 
 36
 (D) the prospective Program Participant has a record of successful performance on contracts from governmental and nongovernmental sources in the primary industry category in which the prospective Program Participant is seeking Program certification; and
 
 
 37
 (E) the prospective Program Participant has, or can demonstrate its ability to timely obtain, the personnel, facilities, equipment, and any other requirements needed to perform such contracts.
 
 
 38
 Whitmore concluded that Vaughn did not meet the statutory criteria for waiver of the two year revenue rule. Unlike the potential for success test, the test for waiver of the two year revenue rule does appear to vest Whitmore with some discretion--discretion which Whitmore could theoretically misuse to further discriminatory aims. To lose his qualified immunity, however, Whitmore must do more than simply exercise discretion. Under Harlow, an exercise of such discretion only loses the protection of qualified immunity when a clearly established right has been violated. Accordingly, Whitmore's immune status depends on whether his decision not to waive the two year revenue rule resulted from impermissible considerations.
 
 
 39
 To establish discriminatory animus on Whitmore's part in refusing to waive the two year revenue rule, Vaughn emphasizes the contents of the OCRC preliminary report, which suggested that in 1986 some SBA officials implemented the 8(a) program under the mistaken belief that minority applicants should be favored over whites. However, Vaughn has alleged no facts linking Whitmore, who made his decision five years after the alleged discrimination occurred, with the type of improper decisionmaking identified in the OCRC report. In fact, the only facts Vaughn has alleged indicate that Whitmore was not influenced by that discriminatory mindset. In evaluating Vaughn's second application, Whitmore became the first SBA official to formally recognize that Vaughn might have met the 8(a) requirement of social and economic disadvantage. By expressly contradicting the SBA's earlier finding that Vaughn was not socially and economically disadvantaged, Whitmore refuted any suggestion that Vaughn would be penalized on account of handicap or race. In the absence of any facts connecting Whitmore to the earlier discrimination, or any facts suggesting that Whitmore harbored discriminatory animus in refusing to waive the two year revenue rule, we do not believe the denial of Vaughn's 8(a) application violated any clearly established rights. In fact, such a denial may well have been the proper result according to the controlling federal law.
 
 
 40
 Reviewing Vaughn's account of his dealings with the SBA over an extended period, we are concerned that his 8(a) application may have been improperly processed. However, that discrimination occurred well before Whitmore became involved in this case, and there is no indication in this record that Whitmore participated in any of the alleged discriminatory acts. Unfortunately for Vaughn, he failed to pursue his discrimination claim until most of the individual defendants, save Whitmore, were able to successfully raise a statute of limitations defense. Yet a time bar favoring some defendants is no reason to impose liability for punitive damages upon Whitmore simply because his actions alone fall within reach of the applicable statute of limitations.
 
 
 41
 The only connection that Vaughn has made between Whitmore's actions and the discrimination he has allegedly suffered is the possibility that Whitmore could have considered the past discrimination in evaluating Vaughn's eligibility for a waiver of the two year revenue rule. According to Vaughn, he would have satisfied the potential for success test if his first 8(a) application had not been denied for discriminatory reasons. Therefore, Vaughn suggests that his current inability to satisfy the potential for success test cannot be used against him, because that inability results from the agency's earlier improper determination. From this perspective, Vaughn has identified one equitable consideration which theoretically could justify a waiver of the two year revenue rule, and therefore entitle him to certification as an 8(a) contractor.
 
 
 42
 We express no opinion on the question of whether waiver of the two year revenue rule could have been justified on the basis of prior discrimination suffered by Vaughn, because the propriety of the waiver decision will be determined later in the district court during resolution of Vaughn's two surviving claims under the Administrative Procedure Act (APA), 5 U.S.C. Secs. 701 et seq. One of these APA claims challenges as "arbitrary and capricious" the SBA's earlier determination--with which Whitmore disagreed--that Vaughn was not socially and economically disadvantaged.[2] The second APA claim challenges as arbitrary and capricious Whitmore's determination that Vaughn did not qualify for a waiver of the two year revenue rule. As he litigates that claim, Vaughn will have ample opportunity to argue that the agency should have granted him a waiver as a remedy for any prior discrimination which took place.
 
 
 43
 In short, the record fails to show that Whitmore, although he may have had an obligation to treat the application free from any motives of discrimination, possessed the power to waive the two-year statute given the undisputed facts before him. In such circumstances, we surely cannot say that Whitmore violated any clearly established rights of Vaughn's.
 
 
 44
 The statute which permits the waiver of the two year revenue rule lists five criteria which must be satisfied, and suffering past discrimination is not one of them. Under Harlow, only violations of "rights of which a reasonable person would have known" defeat an official's claim to qualified immunity. 457 U.S. at 818, 102 S.Ct. at 2738. Because a waiver of the two year revenue rule for a reason not specified in the statute would seem to disobey the express instructions provided by Congress, we do not view Whitmore's failure to treat the waiver statute as a vehicle for remedying past discrimination as an act which destroys his qualified immunity. By definition, no failure to act outside the accepted statutory criteria can violate a clearly established right. Thus, Vaughn's proper remedies are those available under the APA for correction of agency errors.
 
 
 45
 Because John Whitmore did not make any decisions based on Jerry Vaughn's race or handicap, we conclude as a matter of law that he is clothed with qualified immunity from suit arising out of the SBA's denial of Vaughn's application for certification as an 8(a) contractor. Accordingly, we REVERSE and REMAND with instructions to the district court to dismiss Whitmore as a party from this suit.
 
 
 46
 NATHANIEL R. JONES, Circuit Judge, dissenting.
 
 
 47
 I dissent from the majority opinion, and would affirm the denial of Whitmore's motion for summary judgment, because, in my opinion, Whitmore is advancing an argument on appeal which he failed to properly present to the district court.
 
 
 48
 "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In this case, Vaughn alleges that Defendants wilfully violated his right under the Rehabilitation Act to be free of discrimination based upon his handicap, and his rights under 42 U.S.C. Sec. 1981 and 1985(3) to be free from race-based discrimination.
 
 
 49
 In their 58-page memorandum to the district court in support of dismissal and summary judgment, Whitmore and the other named defendants devoted exactly six paragraphs to the defense of qualified immunity. J.A. at 138-140.[1] Defendants stated the legal tests for qualified immunity and then asserted in defense that the SBA employees properly followed the applicable federal regulations. In rejecting Defendants' qualified immunity defense, the district court stated:
 
 
 50
 Defendants do not contend that these are not "clearly established" rights or that a reasonable person would not have known of these rights. Rather, Defendants assert that they based their evaluations on the proper statutory and regulatory criteria. Defendants' position fails to comprehend the purpose of qualified immunity.
 
 
 51
 J.A. at 55-56 (citation omitted).
 
 
 52
 Now, on appeal, Whitmore supplements his qualified immunity defense with another assertion that was not raised below. Relying on Nuclear Transport & Storage, Inc. v. United States, 890 F.2d 1348, 1355 (6th Cir.1989), cert. denied, 494 U.S. 1079, 110 S.Ct. 1807, 108 L.Ed.2d 938 (1990), Whitmore claims that Vaughn has failed to state his claim "in terms of facts rather than conclusions." See Whitmore's Br. at 25-31. Ignoring that this argument was raised for the first time on appeal, the majority finds this argument persuasive. See Maj.Op. at [1326-27]. Thus, the majority bases its holding on Vaughn's failure to connect Whitmore's actions to the discrimination alleged in Vaughn's complaint. A long line of cases in this circuit, however, "strongly reinforces the principle that issues not litigated in the trial court are generally not appropriate for appellate consideration in the first instance." Taft Broadcasting Co. v. United States, 929 F.2d 240, 243 (6th Cir.1991); see also Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) (noting that, as a general rule, "a federal appellate court does not consider an issue not passed upon below").
 
 
 53
 Here, Whitmore was free to advance as grounds for dismissal Vaughn's failure to state his claim "in terms of facts rather than conclusions," but nevertheless failed to do so. As Whitmore's connection, or lack thereof, to the discrimination alleged in Vaughn's complaint is not, in my opinion, a question where proper resolution is beyond any doubt, see Turner v. City of Memphis, 369 U.S. 350, 353, 82 S.Ct. 805, 806-07, 7 L.Ed.2d 762 (1962), I do not believe that this is an appropriate basis for reversing the lower court. I therefore respectfully dissent.
 
 
 
 [1]
 Whitmore's motion, captioned as a "MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT," is ambivalent in its intent and meaning. Government officials are entitled to assert claims of qualified immunity prior to the onset of discovery in the form of a Fed.R.Civ.P. 12(b)(6) motion to dismiss. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). But a defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56(b) ordinarily cannot be considered until the plaintiff has had some opportunity to conduct discovery. White's Landing Fisheries, Inc. v. Buchholzer, 29 F.3d 229, 231 (6th Cir.1994). Accordingly, we will treat the motion in which Whitmore asserted his claim of qualified immunity as a motion to dismiss
 
 
 [2]
 We also express no opinion regarding the proper determination of Vaughn's "socially and economically disadvantaged" status. According to the applicable federal regulations, handicapped individuals may only qualify for 8(a) certification if they have suffered "social disadvantage," as defined in 13 C.F.R. Sec. 124.105(a), and if that social disadvantage has caused them to suffer "economic disadvantage," as that is defined in 13 C.F.R. Sec. 124.106(a). Under these guidelines, Vaughn must first show by clear and convincing evidence that he has been "subjected to racial or ethnic prejudice or cultural bias because of" his blindness. 13 C.F.R. Sec. 124.105(a). After carrying that burden, Vaughn must show that this prejudice and bias "precluded" him "from successfully competing in the" free enterprise system. While the SBA is absolutely not permitted to refuse 8(a) certification solely on account of Vaughn's blindness, the SBA is at the same time not required to admit Vaughn to the program solely because he is blind, unless Vaughn can make an adequate showing that his blindness has resulted in social and economic disadvantage
 
 
 [1]
 Among other things, the Defendants' "Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment" challenges the use of Tennessee's long-arm statute for personal jurisdiction, asserts that the statute of limitations has run for various claims, and argues that Vaughn has failed to make out a prima facie case under both the Rehabilitation Act and the civil rights laws